## Sarah A. Shutt's Admr. v. J. D. Shutt's Admr.

(Decided June 21, 1921.)

Appeal from Kenton Circuit Court
(Criminal, Common Law and Equity Division).

1. Wills—Income—Interest.—Where a widow to whom the will of her husband devised the use and income of his entire estate, real and personal, for life, with remainder at her death to certain of his relatives, sold bank stock left her for life by the will and converted the proceeds to her own use, her estate after her death was by the judgment of the circuit court properly held liable to the remaindermen for the amount she realized for the bank stock. The bank stock being a part of the corpus of the devised estate, she was not entitled to appropriate it or its proceeds. Her estate was, however, properly relieved by the judgment of liability for the interest that accrued thereon, as under the terms of the will it constituted income she as life tenant was entitled to enjoy.

2. Executors and Administrators—Counterclaim—Payment of Taxes.—The rejection by the chancellor of so much of the counterclaim of the widow's administrator as sought credits against the remaindermen for amounts expended by her for taxes upon the entire estate and repairs to the real property while held by her, was not error, as both the taxes and cost of repairs were under the testator's will properly chargeable to the life estate and should have been paid by her as life tenant.

3. Executors and Administrators—Services.—The item of $5,330.00 in the counterclaim for alleged extra services claimed to have been rendered by the widow as executrix of her husband's will was properly disallowed. First, there was no proof of unusual services. Second, for such services as she rendered a commission of five per cent. would have been the maximum limit under the law; and as she was allowed four per cent. for all moneys received and paid out by her as executrix, and was satisfied with the allowance, an additional allowance would have been improper.

CHAS. M. F. STRIGER for appellant.

D. COLLINS LEE and JOHN L. LUNSFORD for appellee.

OPINION OF THE COURT BY JUDGE SETTLE—Affirming.

J. D. Shutt, a resident of Kenton county, died in 1895, testate. He left no children, but was survived by his wife, Sarah A. Shutt, to whom by his will he devised his entire estate, real and personal, for life, with remainder at her death to certain named blood relations of the testator, the second clause of the will providing

as to the estate devised her that she should "hold the same for and during her natural life, and to use, enjoy and dispose of the income thereof as she may desire." The third clause of the will provides as follows: "I hereby empower and direct my said wife, Sarah A. Shutt, to invest such money as may come to my estate by payment of notes, bonds, etc., or from insurance upon my life in such securities as will inure to the benefit of my estate; and also to sell and dispose of any bonds, stocks, lands, tenements or other property belonging to my estate, and reinvest the proceeds in such other bonds, stocks or property as may seem advantageous; and such investments when made shall be held, used, enjoyed and controlled in the same manner as prescribed herein for property owned by me at the time of my death."

The fourth clause of the will provides for the disposition of the estate after the widow's death; and the fifth clause appoints the widow executrix of the will without bond.

After the probate of the will the widow, without formally qualifying as executrix, took possession of the testator's entire estate and remained in possession and control thereof until her death in February, 1918, intestate. After her death the appellant, R. H. Gray, was appointed and duly qualified as the administrator of her estate; and about the same time the appellee, E. S. Lee, was appointed and duly qualified as administrator *de bonis non* with the will annexed of the estate of J. D. Shutt, deceased. After the widow's death, but before the appointment of either administrator, this action was brought by certain remaindermen under the will of J. D. Shutt against the others having a like interest, to obtain a sale of the real estate devised by his will, to which the administrator *de bonis non* with the will annexed of his estate and the administrator of the estate of Sarah A. Shutt were by amended petitions later made defendants. Thereafter by additional pleadings filed by the remaindermen and cross pleadings between the administrators, final distribution among the remaindermen of the J. D. Shutt estate was sought and to that end an accounting and final settlement demanded of the administrator of Sarah A. Shutt respecting the moneys and securities received by her under J. D. Shutt's will as life tenant. It was admitted, however, that appellee as administrator *de bonis non* with the will annexed of the estate of J. D. Shutt had already received of appellant as administrator

of the estate of Sarah A. Shutt certain bonds, stocks, other securities and $983.93, money on deposit, all described in an accompanying paper as what remained at the death of Sarah A. Shutt of the personal property devised her for life by the will of J. D. Shutt; but it was, in substance, alleged that there was left due the estate of J. D. Shutt from that of Sarah A. Shutt a large amount of money and property which could only be ascertained by a settlement of the two estates, in furtherance of which a reference of the cause to the master commissioner was prayed.

The pleadings found in the record were so frequently amended and are so unusually voluminous that we will not undertake to set them forth in detail, so, to avoid confusion, we will only refer to such of them as affect the questions actually presented for decision. It appears from the record that from the time Sarah A. Shutt as executrix and life tenant took charge of the estate devised by the will of J. D. Shutt down to the time of her death, she collected and used for her own benefit, as was her right, the rents and income from the devised estate and within that time made with the county court nine settlements of her accounts as executrix, in the eighth of which she charged the estate with all taxes and repairs and reported no receipts from rents or income, and by that settlement it was made to appear that the estate was indebted to her for taxes and repairs paid for and on the property devised, about $21,000.00. In the meantime she had received in 1899 from the First National Bank $5,-600.00 for fifty-six of one hundred and twelve shares of its capital stock that came to her as life tenant under her husband's will, with which sum she was not charged in any of the settlements. It also appears from the several settlements that Mrs. Shutt intermingled her own accounts with those of the estate, and, as was later made to appear, had charged the estate of the testator with numerous illegal disbursements.

In 1916 she had a controversy with one of the remaindermen, in which the latter made complaint as to numerous alleged illegal charges made in her settlements against the devised estate. The controversy resulted in her making the ninth and final settlement, which disallowed the disbursements for taxes and repairs amounting to about $21,000.00, with which she had been credited by the eighth settlement. By his answer in this action for an accounting the appellant denied all items against the

estate of his decedent sued for, and while admitting that she had received and not been charged with the $5,600.00 obtained for the bank stock sold, alleged that this amount was not a part of the corpus of the estate but merely income with which she could not be charged; and, further, that the $5,600.00 had been used by the decedent in paying debts against the estate and in making investments for the estate, these items being enumerated and aggregating, as claimed, $5,327.36. The answer also pleaded the statute of limitations against the item of $5,600.00.

The answer likewise pleaded a counterclaim, aggregating $38,466.00, of the following items alleged to be due the decedent's estate from that of her husband: $22,021.-38 for moneys claimed to have been expended by the life tenant, in repairs on the devised real property and for taxes on same and the personal property, as shown by her first eight settlements; $5,330.00, it was claimed should be allowed her estate for services rendered by her as executrix of J. D. Shutt's will; $3,114.67, claimed to have been paid by her in taxes on the entire estate and repairs and insurance on the real property from May 6, 1915, to the date of her death, and alleged not to have been allowed in any of the settlements she had made; $8,000.00 for money it was alleged she advanced her husband, J. D. Shutt, in 1868 to purchase the homestead to which he admittedly took the title and in which they lived until his death, and which after his death was "used and occupied as her home continuously for twenty-three years and until her death February 4, 1918, at all times claiming her interest and property therein to the extent of the sum of $8,000.00." The above items of alleged indebtedness were consecutively set up in separate paragraphs, numbered one to six, inclusive. To each of these paragraphs the appellee filed a general demurrer, each of which the circuit court sustained. Appellant excepted to these rulings and failed to plead further as to the matters set up in paragraphs two, four and six, but amended paragraphs three and five by alleging that the expenditures for insurance, taxes and repairs claimed in paragraphs three and five were necessary for the protection of the devised estate. The averments of the amended answer were controverted by reply, which, in addition, alleged that the repairs made by the life tenant were not permanent, and that the several expenditures charged therefor and for insurance and taxes, if made by her as claimed, were and are not chargeable to the es-

tate of J. D. Shutt or the remaindermen under his will, but were legally chargeable to and should have been paid by appellant's decedent as life tenant of the estate devised by the will. It was further alleged in the reply that the ninth settlement was made by her under the advice and supervision of her attorney and was expressly approved by her, and that it corrected the previous ones by rejecting and striking out as illegal the several claims against the J. D. Shutt estate therein allowed and again set up in the third and fifth paragraphs of appellant's answer, and that appellant was estopped by the ninth settlement to demand their recovery or credit for them, which estoppel was duly pleaded. Appellant by rejoinder alleged that his decedent's approval of the ninth settlement resulted from improper advice from her attorney and her incapacity from age and infirmity to understand the settlement, and these averments were in turn controverted by surrejoinder.

After the taking of proof and upon submission of the case the chancellor held that appellee was entitled to recover of appellant $5,600.00, one of the items sued for in the petition, but allowed as credits thereon the items of $983.93 and $24.40 asserted by the appellant's counterclaim, which credits reduced the recovery of appellee to $4,591.67, and the costs of the action. All other demands claimed in the appellee's petition and asserted by the appellant's counterclaim were rejected and dismissed. The latter complains of the judgment entered in conformity with the above rulings of the circuit court, and has appealed.

Appellant's counsel, with apparent seriousness, insists that the judgment of the court below should be reversed because the appellee as administrator *de bonis non* with the will annexed of the estate of J. D. Shutt was without authority to bring or maintain this action, and that such right was in the persons to whom Shutt's will devised the remainder in his estate. It may be conceded that the right of action was in the remaindermen and that the appellee as such administrator was not even a necessary party to the action; but objection to his right to maintain the action or to any defect of parties plaintiff should have been made by appellant in the court below by a special demurrer questioning his legal capacity to sue, or showing the lack of other necessary parties, as provided by Civil Code, section 92, subsection 4. The objection can not first be made in the Court

of Appeals, and if not made in the circuit court the appellate court will treat it as waived. De Haven v. De Haven, 104 Ky. 41; Jackson, Admr. v. Asher Coal Co., 153 Ky. 547; Maiden v. Stewart, 163 Ky. 551.

However, the waiver referred to need not here be considered for the remaindermen under the will of J. D. Shutt were parties plaintiff or defendant to the action, were all before the court and all made beneficiaries of the judgment, and such of them as were the original plaintiffs in bringing the action made appellant and appellee parties, each in his fiduciary capacity. The judgment is as follows:

"It is adjudged that plaintiff E. S. Lee as administrator of the estate of J. D. Shutt and plaintiff and defendant heirs of J. D. Shutt recover of defendant R. H. Gray as administrator of the estate of Sarah A. Shutt the sum of $4,616.07, to which may be credited by $24.40 in favor of said defendant, leaving a judgment against said defendant in the sum of $4,591.67 which may be paid E. S. Lee as administrator aforesaid for distribution."

While in terms the judgment declares the amount recovered may be paid to the appellee, the fact that it directs its distribution by him among the devisees in remainder under J. D. Shutt's will shows them to be the only beneficiaries and makes of him a mere receiver of the court. Appellant may therefore pay the amount of the judgment to appellee for the remaindermen or to the latter in person, or he may pay it into court and ask that it be distributed under its further orders.

In addition to what has already been said of the want of merit in appellant's belated objection to the appellee's right to maintain the action, it may be remarked that the devisees in remainder under J. D. Shutt's will, though parties to the action and expressly made beneficiaries of the judgment appealed from, have not been made parties to the appeal; therefore the appellant can not be granted any relief by this court against them. In Charlton v. Smith, 33 R. 647, respecting this question we said: "The statute requires the appellant to endorse on the record the names of the appellant and appellees. Persons who are not named in the statement as appellees are not parties to the appeal and no relief can be given against them." Board Councilmen v. Farmers Bank, 22 R. 1738; Chinn v. Curtis, 24 R. 1566.

The circuit court committed no error in charging the estate of the widow and life tenant with the $5,600.00 she received for the fifty-six shares of bank stock surrendered or sold by her to the First National Bank. If it had been made to appear from the evidence that this money had been received in dividends upon the bank stock it would have constituted income or profits from the life estate devised her by the will of her husband which under its provisions she would have been entitled to receive and individually use; but as the money was received for the bank stock itself and like the bank stock before its sale was a part of the corpus of the estate for which she should have accounted, and this was never done by her nor the sale reported, in the absence of evidence showing its application by her as executrix to the payment of debts against the estate of J. D. Shutt, appellant as administrator of her estate properly was, by the judgment appealed from, made to account for it.

Sarah A. Shutt was given by the third clause of her husband's will, both as executrix and life tenant of the estate devised, power to sell any bonds, stocks, lands or other property belonging to the devised estate, but with the proviso that she should "reinvest the proceeds in such other bonds, stocks or property as may seem advantageous," the use and income of the property acquired by such reinvestments to be enjoyed by her for life as provided by the will regarding the property sold. The power thus conferred to sell the property devised has coupled with it the duty to reinvest the proceeds in such other like property as might be advantageous to the estate. So if the power to sell the bank stock was exercised by the life tenant, whether as such or as executrix, the duty to reinvest the proceeds as directed by the will of her husband was imperative and should have been obeyed. It was disobeyed, however, and the money received by her for the bank stock illegally converted to her own or some other use.

We agree with the circuit court that appellant can not rely upon the statute of limitations to defeat the recovery by the remaindermen of the money received by his decedent for the bank stock in question. As the money she received for the bank stock was a part of the corpus of the estate, neither her failure to reinvest it as directed by her husband's will nor her failure to charge herself with it in any of her various settlements had the effect to change its status. But she was nevertheless

entitled to its use or the interest or income from it and, therefore, to its possession as long as she lived. It seems apparent from the evidence found in the record that the remaindermen did not learn of the sale of the bank stock by the executrix and life tenant until after the making of her ninth settlement in 1916, which was within two years of her death, and when the discovery was then made there was neither at that time nor thereafter any ownership of its proceeds asserted by the life tenant adverse to the remaindermen, but only a claim on her part that such proceeds or as much as $5,300.00 of the amount had been applied to the payment of debts against the estate devised by her husband's will. There is nothing in the facts of this case that could have caused the statute of limitations to begin to run before the death of the life tenant. It belongs to the class controlled by the general and well known rule that "the life tenant's holding is not adverse to the remaindermen, but, on the contrary, is amicable to them, the possession of the life tenant being the possession of the remaindermen." Therefore the statute of limitations does not begin to run until the death of the life tenant or termination of the life testate; and this is true whether the property constituting the life estate be real or personal property. Ratterman v. Apperson's Ex., 141 Ky. 821; Holmes v. Lane, etc., 136 Ky. 21; Davis v. Wilson, 115 Ky. 639; Phillips v. Johnson, 14 B. Mon. 172.

There are a number of cases which hold that remaindermen may sue in equity before the expiration of the life estate to quiet their title to the property as against an adverse claimant, or to be placed in a condition to make it available when the time shall arrive when they will be entitled to the possession and use of the estate. Simmons, etc., v. McKey, etc., 5 Bush 25; Duncan, etc., v. King's Admr., 163 Ky. 577; Keller v. Stanley, 86 Ky. 245; Penn v. Rhodes, 124 Ky. 798. These cases, however, also hold respecting the recovery of possession of the property that the statutes of limitation do not begin to run against remaindermen until the expiration of the life estate; which is necessarily so, because the possession of a life tenant or of one holding under the latter can not, during the continuance of the life estate, be adverse to the remaindermen. The several cases cited are conclusive of the question that the statute of limitations is not a bar to the recovery by the remaindermen of the proceeds

of the bank stock sold by the appellant's decedent. The
further defense that the proceeds of the bank stock were
applied by her to the payment of debts against the es-
tate of J. D. Shutt, is equally devoid of merit, as there
was no proof made of such debts or their payment. On
the contrary, it appears from the several settlements of
the executrix and other evidence that the assets of the
estate available for the payment of its debts largely ex-
ceeded the latter.

The judgment of the circuit court does not charge the
estate of Sarah A. Shutt with interest on the $5,600.00
for which she sold the bank stock, for the reason, doubt-
less, that she owned under the will of her husband a life
estate therein, as she had owned such estate in the bank
stock and was, as provided by the will, entitled by way
of income therefrom during her life to whatever interest
it earned or might have earned from the time it was re-
ceived by her. The judgment is likewise silent regard-
ing the court's reasons for allowing the credits of $983.93
and $24.40 it gives the estate of the appellant's decedent,
but it elsewhere appears from the record that the first
of these items was the amount of cash she had on deposit
in bank at the time of her death, and which, as we have
previously stated, was paid by appellant to the remain-
dermen with the delivery to them of certain securities
belonging to the estate devised her for life by the will of
J. D. Shutt; and this deposit, we assume, was treated by
the court as income derived from the estate devised her
for life by the will, and to which the remaindermen were
not under the will entitled. The $24.40 credit was the
amount of a premium admittedly paid by the decedent,
Sarah A. Shutt, for insurance obtained on a part of the
devised real estate after she made what is designated in
the pleadings as her ninth or final settlement. It should
here be remarked that the court below was evidently of
the opinion that all premiums for insurance paid by Mrs.
Shutt during her life tenancy on the real estate devised
by the will of J. D. Shutt were chargeable to the estate,
hence such insurance premiums as were credited to her
in the ninth and several prior settlements were permit-
ted to stand. But as neither the appellee nor remainder-
men have taken a cross appeal from the judgment of the
court the question as to whether or not it should have re-
lieved the devised estate of those charges for insurance
is not before us for determination.

Manifestly, the rejection by the circuit court of the demands set up by the first, second, fourth and sixth pargraphs of the appellant's counterclaim was not error. Those contained in the first, second and third paragraphs, aggregating $22,021.38, for repairs to and improvements on the real estate and taxes on the real estate and personal property during his decedent's possession of it as life tenant, should have been borne by her as life tenant of the devised estate out of the rents and profits thereof, which, according to the evidence, was amply sufficient to meet such expenditures and also provide her a competent income. What is said of this item applies with equal force to that of $3,114.67 contained in the fifth paragraph, which is made up of like charges covering the time intervening between May 6, 1915, and the life tenant's death. It is as a matter of law the duty of a life tenant, unless relieved of such duty by the will or deed under which his life estate is acquired, to make at his own expense such repairs as are needful to the preservation of the estate and pay all taxes legally assessed against it. This is likewise true as to improvements he may make on the property constituting the life estate. In Henry v. Brown, 99 Ky. 13, it is said, respecting this rule: "It has been often and distinctly held by this court that a tenant for life can not lay out money in building on the land and charge it on the estate in remainder, or make it a personal charge against the remaindermen. . . ." Holmes v. Lane, 136 Ky. 21; Nall v. Miller, 95 Ky. 445; Ratterman v. Apperson, 141 Ky. 821; Wilson v. Hamilton, 140 Ky. 327; Galbaugh v. Rouse, 31 R. 1195.

While it does not appear from any order to that effect when or how the control of the estate devised by the will of J. D. Shutt by Sarah A. Shutt ended as executrix or began as life tenant, or, indeed, that there was ever any formal transfer of it from her custody as executrix to her possession as life tenant, she was in possession of the entire estate for at least twenty years, and while her settlements were made as executrix, her control of the estate during that time was more in keeping with her character of life tenant than as executrix—in fact it was managed and enjoyed by her under the rights and powers conferred upon her as life tenant by her husband's will—we are unable to see from anything appearing in the record why she could not finally have settled all her accounts as executrix fifteen years before her death. In view of these facts we must assume that a suf-

ficient time had long since elapsed for the completion of her executorial duties and that at the time of her death and for many years prior thereto her holding of the devised estate was as life tenant.

The item of $5,330.00, claimed in the fourth paragraph for services alleged to have been performed by appellant's decedent as executrix of the will of J. D. Shutt, might well have been disallowed on the single ground that it was unsupported by evidence. It was actually rejected by the court, however, because the executrix had been fully paid out of the estate devised by the will of J. D. Shutt for all services rendered or required of her in a fiduciary capacity. The fact that she was life tenant of the estate devised as well as executrix of the will gave her no right to additional compensation as executrix. On the contrary, a life tenant charged by law with the custody of income producing property constituting the life estate is entitled to no compensation for the management thereof. But a life tenant who is also executrix is in the latter capacity entitled to an allowance for collecting and disbursing funds sufficient to discharge the debts against the estate, but such an allowance Kentucky Statutes, section 3883, does not permit to exceed 5 per cent. of the amount collected and disbursed; and in the last settlement made by appellant's decedent as executrix of J. D. Shutt's will, which recapitulates the charges and credits of all previous ones, it is stated that she disbursed altogether in discharging the debts against his estate $10,310.67, as compensation for which she was allowed to retain out of the assets of the estate $419.57, or practically four per cent. of the amount that passed through her hands. This compensation was fixed by the county court, and as there was no evidence that the services of the executrix were difficult or of such unusual character as to require an additional allowance, and no showing of an abuse by that court of its discretion in fixing the allowance as was done, the circuit court properly refused to disturb it.

The claim of $8,000.00 attempted to be asserted against the remaindermen by appellant in the sixth paragraph of his counterclaim for money alleged to have been advanced by his decedent to her husband, J. D. Shutt, for the purchase of a home for them, was also properly disallowed by the circuit court. Its staleness, to say nothing of the insufficiency of the allegations of the paragraph to state a cause of action therefor, justified its

condemnation.    Besides a devisee who has accepted the benefits of a will by taking and holding under it property it devised her, is estopped to set up claim to the property upon the ground of having title to it or a lien upon it acquired otherwise than by the will.    In other words, property can not be claimed both under and against the will.    Owingsville Bank v. Stone, 80 Ky. 109; Green v. Ponder, 22 R. 716.    The rule announced above is thus concisely stated in 40 Cyc. 1893:

"There is an implied condition that he who accepts a benefit under a will shall adopt the whole, conforming to all its provisions and renouncing every right inconsistent with it."

Manifestly, application to the claim in question of the principle declared by the rule, *supra,* authorized the ruling of the circuit court sustaining the appellee's demurrer to the sixth paragraph of the counterclaim.

As our consideration of the record before us leads to the conclusion that the rights of the parties were, on the whole, equitably determined by the court below, the judgment is affirmed.