Janis K. VAUGHN, Mary C. Milby, Administratrix of the Estate of Aaron Wayne Milby, Deceased and Mary Charles Pepper, Appellants,

v.

Lee PERKINS, Administrator of the Estate of Lissie Perkins Pepper, Deceased, Appellees.

Court of Appeals of Kentucky.

Jan. 26, 1979.*

* The decision of the panel was made prior to Jan. 1, 1979, but the opinion was not rendered until this date.

258

Morris Butler, Greensburg, James E. Bondurant, Bondurant, Whitlow, Scott & O'Dell, Hodgenville, for appellants.

Carl Howell, Howell & Howell, Hodgenville, for appellees.

Before HOWARD, HOWERTON and PARK, JJ.

PARK, Judge.

By a joint will executed with his wife, A. G. "Gid" Pepper bequeathed his entire estate to his wife, Lissie Perkins Pepper, for her lifetime. He also appointed Lissie executrix of his estate. After Gid's death, Lissie treated a joint checking account and certain certificates of deposit as her own property rather than property passing to her as life tenant under the will. Following Lissie's death, the plaintiffs-appellants, remaindermen of Gid's estate under the will, asserted a claim against the administrator of Lissie's estate for the checking account and certificates of deposit. The sole question on appeal is whether the statute of limitations began to run on the appellants' claim from the date of Lissie's settlement as executrix or not until the date of Lissie's death.

■ The circuit court held that limitations commenced to run on the date Lissie filed her final settlement as executrix of Gid's estate. We disagree. We conclude that the remaindermen were not required to assert any claim to the funds until after Lissie's death.

I

Gid and Lissie Pepper were married in 1961. It was the second marriage for both. They opened a joint checking account and acquired three certificates of deposit between January 1, 1965, and June 9, 1966. The joint account and certificates were issued in the names of "Mr. or Mrs. A. G. Pepper" and "Mr. or Mrs. Gid Pepper." According to the remaindermen of Gid's estate, most of the money placed in the account and certificates belonged to Gid before his marriage to Lissie.

On July 5, 1966, Gid and Lissie executed a joint will containing the following provisions:

We, A. G. PEPPER AND LISSIE PERKINS PEPPER, husband and wife, of Buffalo LaRue county Kentucky, both being of sound mind and memory, do each mutually make this our last will and testament, in consideration of the other making his and her will, and agree that same cannot be changed without the consent of the other, in writing, in manner and form:

1. After payment of just debts and funeral expenses, all the property of each shall go to the survivor, for his or her lifetime. The survivor of us is named executor or executrix, as the case may be, to serve without bond.

2. The property of A. G. Pepper, after the death of Lissie Pepper, shall pass to Leonard Pepper, his son, one-half, and to Aaron W. Milby and Janis K. Milby, his grandchildren, one-half between them.

3. The property of Lissie Pepper after the lifetime of A. G. Pepper, shall pass to the heirs-at-law of said Lissie Pepper.

4. The survivor shall have the right to use the property of the other so devised herein, for his or her use and benefit, and as needed for such survivor's support and maintenance, even to the extent of use of the principal of such property, and as deemed necessary, in the sole discretion of such survivor.

Gid died August 1, 1967. The joint will was probated as Gid's will, and Lissie qualified as executrix.

On February 3, 1968, Lissie filed her final settlement as executrix of Gid's estate. The settlement was approved on March 25, 1968. In the settlement, Lissie did not charge herself as executrix with the checking account or certificates of deposit. However, the settlement did state:

Certain certificates of deposit and checking account, joint ownership of decedent and undersigned, were not assets in the hands of executrix, and title thereto passed other than by will.

There is nothing in the record to suggest that any of the remaindermen under Gid's will had actual notice of the statement in the settlement respecting the joint account or certificates of deposit.

Lissie Pepper died on June 3, 1976. No one has offered the joint will of July 5, 1966, for probate as Lissie's will. Her brother has qualified as administrator of Lissie's estate. When Lissie's administrator refused a claim by the remaindermen of Gid's estate to the funds represented by the joint account and certificates of deposit, this action was commenced on January 14, 1977.

## II

■ The trial court held that the statute of limitations began to run from the date Lissie made her final settlement as executrix of Gid's estate, February 3, 1968. The trial court also held that the action was barred by the seven year statute of limitations provided by KRS 413.200.[1] Even if limitations began to run with the filing of the settlement in 1968, the seven year statute of limitations would be inapplicable. By its own terms, the seven year statute applies only to claims based on a judgment against the decedent or on a contract made by the decedent. The statute does not apply to claims based on acts of the personal representative. *See Cummins v. Kennedy,* 13 Ky. (3 Litt.) 118, 121, 14 Am.Dec. 45 (1823).

■ An action to surcharge a personal representative's settlement is considered to be an action for fraud or mistake governed by the five year statute of limitations provided by KRS 413.120(12)[2] unless extended to a maximum of ten years by the savings provisions of KRS 413.130(3).[3] *Hall's*

*Adm'r v. Hall's Ex'r,* 265 Ky. 528, 97 S.W.2d 23 (1936); *Godbey v. Milliken,* 255 Ky. 788, 75 S.W.2d 345 (1934); *see also* 2 Russell and Merritt, *Kentucky Practice: Probate Practice and Procedure* § 1397 (1978 Pocket Part). The trial court recognized the possible application of the ten year limitation period provided by KRS 413.130(3). Citing the decision of this court in *Skaggs v. Vaughn,* Ky.App., 550 S.W.2d 574, 577 (1977), the trial court in this case held that Vaughn and Milby were not entitled to the benefit of the provisions of KRS 413.130(3) because the complaint failed to allege that any fraud or mistake in Lissie's settlement could not have been discovered earlier by the exercise of ordinary diligence. If limitations commenced to run with the filing of the settlement, the trial court was correct in holding that the action was barred. The settlement was a matter of public record. No reason was offered why, by the exercise of ordinary diligence, the appellants could not have discovered that Lissie was claiming in her settlement that the checking account and certificates of deposit were not a part of Gid's estate. Thus, any attack on Lissie's settlement would be barred by the five year statute of limitations. KRS 413.-120(12); *Hall's Adm'r v. Hall's Ex'r, supra.*

■ The appellants contend that limitations did not begin to run until the date of Lissie's death. Under the terms of the joint will, Lissie was life tenant of Gid's entire estate. The appellants did not have actual notice that Lissie was claiming the funds as her own rather than under the terms of the joint will. As a general rule, limitations

---

1. KRS 413.200 provides:

   No action against a personal representative who has settled his accounts and made distribution of the whole assets in his hands, on any judgment or decree against his testator or intestate, or on any contract made by him, shall be brought after the expiration of seven (7) years after the qualification of the representative.

2. KRS 413.120(12) provides:

   The following actions shall be commenced within five (5) years after the cause of action accrued:

   . . . . .

   An action for relief or damages on the ground of fraud or mistake.

3. KRS 413.130(3) provides:

   In an action for relief or damages for fraud or mistake, referred to in subsection (12) of KRS 413.120, the cause of action shall not be deemed to have accrued until the discovery of the fraud or mistake. However, the action shall be commenced within ten (10) years after the time of making the contract or the perpetration of the fraud.

will not run against the remaindermen until the termination of the life estate, and the possession of the life tenant is not adverse to the remaindermen. *Slack's Ex'r v. Barrett,* 290 Ky. 251, 160 S.W.2d 595 (1942); *Shutt's Adm'r v. Shutt's Adm'r,* 192 Ky. 98, 232 S.W. 405 (1921); *Thompson's Ex'r v. Thompson's Ex'r,* 155 Ky. 323, 159 S.W. 831 (1913). On the other hand, Lissie's administrator asserts that this is an action to surcharge Lissie's settlement as executrix of Gid's estate and that it is immaterial that Lissie was also life tenant under Gid's will. *Hall's Adm'r v. Hall's Ex'r supra; Wren's Ex'r v. Wren's Ex'x,* 126 Ky. 704, 104 S.W. 737 (1907).

The basis of the appellants' claim must be examined in order to determine whether limitations began to run when Lissie filed her settlement in Gid's estate or not until Lissie's death.

### III

■ Because the joint checking account and certificates of deposit were in the name of "Mr. *or* Mrs. A. G. Pepper" and "Mr. *or* Mrs. Gid Pepper," there was a rebuttable presumption that Gid and Lissie intended to hold the funds as joint tenants with survivorship rather than as tenants in common. *Saylor v. Saylor,* Ky., 389 S.W.2d 904 (1965); *Maess v. Greenfield,* Ky.App., 547 S.W.2d 777 (1977). The appellants contend that the terms of the joint will of July 5, 1966, rebut any presumption of survivorship in the funds. According to the appellants' theory of the case, the joint will expressed Gid's intention to give Lissie only a life estate in his property with a remainder to the appellants at her death.

■ A joint will may constitute a contract between the parties to the instrument. The terms of a *contractual* joint will may be enforced by impressing a trust upon the estate of the survivor in favor of residuary legatees under the joint will. *Tapp v.*

*Reynolds,* Ky., 383 S.W.2d 334, 336 (1964); *Watkins v. Covington Trust & Banking Co.,* 303 Ky. 664, 198 S.W.2d 964, 966 (1947); *see also Puckett v. Hatcher,* Ky., 307 Ky. 160, 209 S.W.2d 742 (1948). The joint will executed by Gid and Lissie Pepper was clearly contractual. The joint will expressly provided that:

"We . . . do each mutually make this our last will and testament, in consideration of the other making his and her will, and agree that same cannot be changed without the consent of the other, in writing . . . ."

When Gid deposited funds in the joint name of Lissie and himself, Lissie became the third party beneficiary of the contract between Gid and the bank. *Saylor v. Saylor, supra.* We know of no reason why those contractual rights could not be modified by a contractual joint will if the parties so intended. *See* the Annotation, 85 A.L.R.3d 8, 63–68 (1978).

The appellants are asserting rights under the joint will which could not become possessory until Lissie's death. Furthermore, the appellants contend that the contractual joint will was intended to apply to all property owned by Gid and Lissie whether or not passing as a part of Gid's probate estate. Consequently, Lissie's settlement of Gid's estate would not determine the extent of the appellants' rights under the joint will. For these reasons, we conclude that this case should be governed by the principles set out in *Shutt's Adm'r v. Shutt's Adm'r, supra,* rather than those applied in *Hall's Adm'r v. Hall's Ex'r, supra.* We conclude that the appellants' claim is not barred by the statute of limitations.

### IV

We express no opinion on the merits of the case. Several issues remain to be decided by the trial court: the extent to which Gid's separate funds were placed in the joint checking account and certificates of

deposit; whether Gid intended a tenancy in common or a joint tenancy with survivorship by placing any of his funds in the joint name of Lissie and himself; and whether Gid and Lissie intended to alter their respective interests in the funds by the execution of the contractual joint will. Furthermore, we recognize that the joint will granted Lissie the right to consume so much of the principal of the property in which she had a life estate under the joint will as she in her "sole discretion" deemed necessary for her support and maintenance. The appellants would have no claim against Lissie's estate for any portion of the funds which she may have expended for her support and maintenance.

The judgment of the circuit court is reversed for further proceedings consistent with this opinion.

All concur.