## Kentucky & West Virginia Power Company v. Elkhorn City Land Company.

### Same v. Martin, et al.

### Same v. Wilson.

(Decided January 29, 1926.)

## Appeals from Pike Circuit Court.

1. Easements—Use of Easement Must be as Reasonable and as Little Burdensome to Servient Estate as Possible.—Use of an easement must be as reasonable and as little burdensome to the servient estate as the nature of the easement and its object will permit.

2. Eminent Domain—Instruction that Power Company could Capriciously Exclude Landowner from Strips Sought to be Condemned Held Error.—In proceeding to condemn land for right of way for power transmission lines, since landowners had right to use strips sought to be condemned as they saw fit, including their use for removal of coal and timber from remaining lands, in so far as such use did not interfere with reasonable exercise of ease-

ment, instruction that power company could capriciously or otherwise exclude landowners from use of the strips held error.

HARMAN, FRANCIS & HOBSON for appellant.

STRATTON & STEPHENSON for appellee Elkhorn City Land Company.

J. M. BOLLING and L. J. MAY for appellee Martin.

L. J. MAY for appellee Wilson.

OPINION OF THE COURT BY JUDGE DIETZMAN—Reversing.

The three above styled appeals involve the same question and will be disposed of in one opinion.

The appellant is a power company and has constructed transmission lines from its power plant at Betsy Layne in Floyd county to various distributing centers in that and adjoining counties. In the course of this construction, it became necessary in some instances to condemn a right of way through the land of those property owners with whom the appellant could not agree for voluntary conveyances. Among such owners were the three appellees.

In the case of the appellee, Elkhorn City Land Company, appellant's line runs through the land company's property for a distance of 1,790.2 feet. The commissioners appointed in the county court in this condemnation proceeding found that the damages sustained by the taking of the land company's property amounted to $400.00. The land company filed exceptions to their report and on the trial in the county court the jury awarded the land company a verdict of $1,050.00. On appeal to the circuit court the verdict awarded was $1,250.00, and from the judgment entered on that verdict the appeal as to the land company is prosecuted.

In the case of Alfred Martin, the transmission line of the appellant runs a distance of 2,319 feet through the property he owned at the outset of this litigation. The county court commissioners awarded him the sum of $300.00. On exceptions to their report, the county court jury gave him the sum of $400.00. Martin appealed from this verdict to the circuit court, pending which appeal he conveyed away a small part of his land measuring 120 feet by 120 feet to the appellee, C. A. Wilson. The trans-

mission line runs across the entire width of the back end of this lot. Wilson was made a party to the Martin case in the circuit court and the jury there awarded him $250.00 and Martin $1,100.00. From the judgments entered on these verdicts the power company brings the other two appeals.

The nature of the easement which the power company sought to acquire over the lands of these appellees is thus set out in the petitions:

"The right of way and easement in, on and over a strip of land 50 feet wide and extending 25 feet on either side of said center line for the purpose of erecting, operating and maintaining poles, wires, and fixtures to be used for transmission lines in transmitting electric and other power, as well as telephone and telegraph lines, together with the right of erecting and maintaining on said 50-foot strip poles, towers, cross-arms and fixtures and string wires and cables, with the right to remove and add to the number of same at will, and to cut, and, at the option of the power company, to remove from said 50-foot strip the timber, and with the right to cut any timber on a 100-foot strip, lying 50 feet on either side of said center line, which may endanger said line, and with the right of ingress and egress on, through and over said 50-foot strip for the purpose of doing anything necessary or useful in the enjoyment of the said easements above referred to.

In submitting these cases to the jury, the court told it that it should find for the landowners "such sum as you may believe from the evidence is the fair and reasonable cash value of the rights, easements, privileges and timber taken" by the appellant upon and over the respective strips of the land sought to be condemned. During the course of its deliberations, the jury returned to the court and propounded to it the following question:

"Does the defendant (landowner) have a right to bring timber and coal out over this strip of land?"

When this question was asked the plaintiff offered the following instruction which the court declined to give:

"The court tells the jury that the plaintiff power company does not take the strip of land described in the petition, but that its rights are confined to an

easement or privilege in or on said strip of land for the purpose of erecting, operating and maintaining thereon poles, towers and wires and fixtures to be used as a transmission line in transmitting electric and other power, including a telephone and telegraph line, and it also has the right to cut timber on a 100-foot strip, lying 50 feet on either side of the center line and has the right to go over the 50-foot strip to inspect, patrol, repair and maintain said line.

"Said power company has no exclusive rights in said strip and it must exercise the above mentioned rights in a reasonable and prudent manner and in such a way as to do to the landowners no unnecessary or unreasonable damage or cause him any unnecessary loss; and the landowners may use said strip of land in any manner which does not interfere with the continued maintaining and use of said power line. It is further the duty of said power company to use the highest degree of care to maintain its said lines in a safe condition and so that same will cause no damage to persons about the premises."

In lieu of this offered instruction, the court gave the following one:

"In response to the question propounded by the juror, the court tells the jury that the answer may be found in plaintiff's petition setting forth the rights sought to be condemned, which petition the jury may take with them when they retire for deliberation. The court further tells the jury that the plaintiff has an easement or privilege in the strip of land sought to be condemned for the purpose of erecting, operating and maintaining thereon towers, poles, wires and fixtures, to be used as a transmission line in transmitting electric and other power, including a telephone and telegraph line, and the plaintiff has the exclusive right to said easements and privileges if it sees fit to exercise them, and the defendant has no right to use said strip of land sought to be condemned for any purpose inconsistent with said right."

Appellant insists that this instruction was erroneous because it implies that the power company has the right to the exclusive possession of the strip sought to be condemned, which right it may exercise capriciously if it so elects; and that this implication was the one put

upon it by the jury in the light of the question it asked to which the instruction was responsive and the size of the verdicts returned.

It is elementary that the use of an easement must be as reasonable and as little burdensome to the servient estate as the nature of the easement and the object of it will permit. Maxwell v. McAtee, 9 B. Mon. 20; DeVine v. McRohan, 23 Ky. L. R. 1636, 65 S. W. 799; 9 R. C. L. 784, 787. In this case, the landowners had a perfect right to use the strips sought to be condemned in any way they saw fit, including the use of them for the removal of coal and timber from the remaining lands, in so far as such use did not interfere with the reasonable exercise or enjoyment of the easement herein sought to be acquired. The instruction of the court did not make this clear to the jury, but, on the contrary, told the jury, in effect, that the power company could capriciously or otherwise exclude the landowner from any use of the strip. In this, the court committed error. In the very recent case of United States of America v. River Rouge Improvement Co., et al., in the Supreme Court of the United States, 70 L. Ed. —, there was involved the condemnation of certain property along the river Rouge for the purpose of widening and deepening that river for purposes of navigation. Among the questions which the jury was called upon to decide was the one relating to the benefits the landowners would receive if the river was improved as proposed, which benefits were to be considered in reduction of damages to be awarded for the property taken. On this point, the trial court charged the jury *inter alia* that:

"The government had 'the absolute power of control' over navigable streams, and the right to deprive any riparian owner of all access to the navigable portion of the stream and order the removal of any docks or other structures placed in the stream; that the deepening and widening of the channel would not confer on any riparian owner any property right to use the river for loading or unloading of vessels, this being 'subject to the absolute power of control by the government;' that the jury could not make any deduction of benefits on the theory that the improvement would increase any property right in connection with the access to or use of the river or bring the owner any new or different property right of access and use for purposes of navigation; that

no benefit could be deducted unless the remainder of the land was rendered suitable for new or greater uses in navigation because of its new location 'and because of a greater opportunity directly and specially to enjoy such use of the improved river as the government may permit such owner to have;' and that the jury should keep 'always in mind the uncertainty of securing from the government the privilege to enjoy these advantages, and the limited character of whatever advantages may be so secured'.''

The government requested that the jury be instructed:

''That a riparian owner bordering on the new stream would have in respect thereto the usual rights of navigation pertinent to riparian property; that is, the right of access to the navigable part of the river in front of his property and the right to make a landing, dock or pier upon his harbor line, subject only to such general rules and regulations as the government, in its power over navigation, might properly impose for the protection of the public right of navigation; that this power of the government over navigation for the protection of public rights can not be arbitrarily and capriciously exercised so as to destroy these riparian rights, but must be exercised with reasonable relations to the requirements of navigation.''

This request was denied. The Supreme Court held that the giving of the instruction as above noted and the refusal of the one requested was prejudicial error. The court said:

''This right of a riparian owner, it is true, is subordinate to the public right of navigation, and subject to the general rules and regulations imposed for the protection of such public right. And it is of no avail against the exercise of the absolute power of Congress over the improvement of navigable rivers, but must suffer the consequences of the improvement of navigation, if Congress determines that its continuance is detrimental to the public interest in the navigation of the river. United States v. Chandler-Dunbar Co., *supra*, 62, 70.

''The right of the United States in the navigable waters within the several states is, however, 'limited

to the control thereof for purposes of naviga-
tion.' Port of Seattle v. Oregon Railroad, 255 U. S.
56, 63.  And while Congress, in the exercise of this
power, may adopt, in its judgment, any means hav-
ing some positive relation to the control of naviga-
tion and not otherwise inconsistent with the Consti-
tution, United States v. Chandler-Dunbar Co., *supra,*
62, it may not arbitrarily destroy or impair the
rights of riparian owners by legislation which has
no real or substantial relation to the control of navi-
gation or appropriateness to that end.  In Yates v.
Milwaukee, *supra,* 504, it was said in reference to the
right of a raprian owner on a navigable stream:
'This riparian right is property and is valuable, and
though it must be enjoyed in due subjection to the
rights of the public, it cannot be arbitrarily or
capriciously destroyed or impaired.'  This language
was cited with approval in Illinois Central Railroad
v. Illinois, *supra,* 445.

"Considering the charge of the court in the light
of these general principles, we find that it was per-
meated by the fundamental error, emphasized by the
refusal of the requests, that the jury were left to de-
termine the amount of the benefits to be deducted
on the theory that a riparian owner on the improved
river would have merely such uncertain and contin-
gent 'privileges' of access to the navigable stream
and of constructing docks fronting on the harbor
line, as the government, in the exercise of an abso-
lute control over the navigation of the river, might
see fit to allow him, instead of being instructed that
he would have a right to such access and the con-
struction and maintenance of such docks until taken
away by the government in the due exercise of its
power of control over navigation.  And this error
was the more serious since the plan of the improve-
ment contemplated that the improved river should
become a slip for docks and industries and recog-
nized the right of a riparian owner to construct docks
upon the harbor line; and there was nothing in the
evidence indicating any probability that the govern-
ment would at any time abrogate or curtail this right
in any respect."

The reasoning of the Supreme Court is entirely ap-
posite to the case before us.  The instruction herein

complained of was permeated by the fundamental error that the jury was left to determine the value of the easement condemned on the theory that the landowner would have merely such uncertain and contingent rights in the strip of land over which the easement passed as the power company in the exercise of an absolute control over said easement might see fit to allow him instead of being instructed that such landowner would have the right to enjoy that strip in every way not inconsistent with a reasonable and prudent exercise and enjoyment by the power company of the easement it sought to acquire, especially since there was nothing in the evidence indicating any probability that the power company would undertake to enjoy or use otherwise that easement.

On a retrial of the cases, the court will, then, instruct the jury as to the character of the easement sought to be condemned and will inform it that the landowner may in all respects use the strip of land over which the easement passes so that such use does not interfere with the reasonable and prudent exercise and enjoyment by the power company of the easement it is seeking to acquire. As the cases must be reversed, the question as to the excessiveness of the verdicts is not passed upon as it may not occur on the retrials. For the error of the trial court in failing to instruct the jury as indicated, its judgments in these three cases are reversed.

Judgments reversed.