# Puckett et al. v. Hatcher et al.

February 27, 1948.

Rehearing denied April 23, 1948.

Claude Hudgins and J. Verser Conner for appellants.

Woodward, Dawson, Hobson & Fulton for appellees.

OPINION OF THE COURT BY JUDGE THOMAS—Affirming.

James A. G. Puckett and Bebe Puckett (nee Defevers) were husband and wife residing in Jefferson County, Kentucky. They jointly owned some real estate and individually some personalty, the value of which is not shown in this record. In 1931 the wife duly exe-

cuted her will devising the bulk of her property to her husband, the latter not having executed a will at that time. On December 15, 1936, they jointly executed a writing in the handwriting of each of them.

The couple had no children, but the husband had eight brothers and sisters, or children of deceased ones, surviving him, whilst the wife had six brothers and sisters, or children of deceased ones. After first making some specific devises not herein involved, they provided that their combined estates should be divided into fourteen parts, each of their surviving brothers and sisters to take 1/14th and children of the deceased ones to take the part of their deceased parent.

The writing was not witnessed and since it was not written "wholly" by either of them it could not be regarded as a holographic will and likewise since it was not witnessed it was ineffective as a testamentary disposition of their property. Therefore, when later offered for probate it was rejected, which attorneys for both sides admit was proper. That writing will hereinafter be referred to as the abortive will. In it a joint life estate was reserved and to the survivor of the couple.

The wife, Bebe Puckett, died September 8, 1943, and her surviving husband died October 24, 1945, after having married his second wife, Minnie B. Defevers, on September 8, 1945. Between those dates he executed a will devising his property, including that which he obtained under his first wife's will, which had been probated, to his second wife. The probation of that will was contested, but we upheld its probation in the case of Puckett's Ex'x v. Puckett, 305 Ky. 812, 205 S. W. 2d 1016.

This action was filed in the Jefferson circuit court by appellants (77 in number) against Minnie Puckett, the second wife of James A. G. Puckett, individually and as administratrix of her deceased husband's estate, and others, in which they pray:

"That the contract of December 15, 1936, between James A. G. Puckett and Bebe Puckett is a valid and binding contract and that upon the death of James A.

G. Puckett the parties herein, plaintiffs and defend-. ants, became entitled to all the property of the said James A. G. Puckett and Bebe Puckett, in the proportions hereinabove set out."

In that quotation the word "contract" as appearing in the prayer of the petition is only inferable from the language of the abortive will and which plaintiffs construed as such. Defendants filed a general demurrer to the petition, but before it was acted on they filed an answer in which they admitted the foregoing facts, but denied the construction placed upon them by plaintiffs to the effect that the abortive will was a *contract* or an *agreement* of Puckett and wife to create a trust in and to their combined property for the benefit of those named therein in the proportions prescribed. On the contrary defendants insist that the abortive will was ineffective for any purpose and conferred no rights, privileges, nor benefits in and to the combined property of each party thereto and left the situation exactly as it was before the execution of that document. Later the court sustained defendant's general demurrer to the petition and plaintiffs, declining to plead further, their petition was dismissed, from which they prosecute this appeal.

To sustain their contention appellants strongly rely upon the case of Watkins v. Covington Trust and Banking Co., 303 Ky. 644, 198 S. W. 2d 964, but that case involved no abortive effort to make a will, but only the interpretation and effect of a joint and mutual will which the husband and wife did legally execute, but which the wife after her husband's death attempted to revoke by the execution of her individual will. We held that since the contract between the husband and wife in that case had been performed the survivor could not alone revoke it after the death of the other who, of course, could not and did not join in the revocation. That distinction alone is sufficient, we conclude, to render that case not applicable to the facts of this one. However, there are other facts in that opinion which will be readily seen by the reader that also differentiates it from the facts appearing in this case.

We have above pointed out that defendants insist that the abortive will left the title to the property in-

volved in this case in the same condition as it was before any attempt was made to make a joint or mutual will.

Defendants also insist that if they should be mistaken as to that contention, and that if the abortive will, as insisted by appellants, be considered as a contract to make a joint will as indicated in the abortive attempt to do so, then the contract attempted to be spelled out of its language was without consideration or, if not, then a failure of consideration and the alleged contract for those reasons became nonenforcible. We will now undertake the determination of those divergent contentions.

Our first task would appear to be to ascertain the intent of the parties and their purpose to be accomplished by the execution of their abortive will. The rule is universal that the intention which the writing itself shows the parties contemplated is the one to be applied and enforced by courts. The writing in this case purports only to be a will and clearly and unmistakably establishes their purpose not to create by contract the relationship of trustee and beneficiary in and to their combined property. To construe their abortive effort to make disposition of their property animo testandi into a contract by which their title would be reduced from an absolute one into only a joint life estate for each and upon the death of one of them to the survivor would be clearly subversive of the plain and express intention of the parties, which was to make a joint will operative only upon their deaths, and apply only to the property they *then* owned. Such purpose and intention is far removed and radically different from that of creating a remainder interest to the named devisees in the abortive will with only a life estate reserved to each of them and to continue to the survivor. Surely the parties never intended any such latter result.

The case would be different if the writing in contest had been legally executed as a joint will. In that case the agreement to do so having been performed by each party neither of them could abrogate it without the consent of the other. If, however, one dies without abrogating it the survivor may not repudiate it thereafter and that seems to be the only effect to be given mutual

wills made pursuant to an agreement between the contracting parties.

The contention of appellants in this case in its last analysis is simply that Mr. and Mrs. Puckett entered into a contract entirely different from their expressed intention by which they transferred to the persons named in their abortive will a fee simple title in remainder after the expiration of their reserved life estates therein. If that be true then such remaindermen as were then living acquired a vested estate in remainder to their designated portion in and to the combined property of both husband and wife, and although it might be defeasible upon conditions subsequent, one of which would be death before the expiration of the particular estate, as the muniment of title might prescribe. It is so declared by numerous domestic cases listed in Vol. 6 of Caldwell's Kentucky Judicial Dictionary beginning on page 2369, two of which are: Foster v. Foster, 189 Ky. 370, 225 S. W. 48; Sherley v. Sherley, 192 Ky. 122, 232 S. W. 53, and a number of others. We are confident that no such construction may be given to the writing in contest.

However, for the purposes of this case let it be assumed that Mr. and Mrs. Puckett agreed to execute mutual wills according to the terms set out in the writing here involved, then the consideration for such an agreement undoubtedly was that each party thereto would execute a *valid* will pursuant to the agreement. Because neither did so in this case the appellees contend that the unperformed agreement is of no legal significance and may not be enforced, as it would have been if the agreement had been carried out. But appellants contend that under the rule that a promise by one for a promise by another is a valid consideration for a contract to do the things promised, and that the mutual promises in this case to execute a mutual will furnished the necessary consideration required to make such an agreement enforcible as a declaration of a trust, although they failed to perform their mutual agreement. In making such contention learned counsel overlooks the fact that the mutual promises in this case consisted in the agreement to do something, and which was to execute a valid will containing the terms embodied in the abortive one which neither of them did.

The universal rule requiring performance of mutual promises is thus stated in Williston on Contracts, Revised Edition, Sec. 812, from which we quote:

"Despite the fact that the promise of each party in a bilateral contract may not in form be conditional upon performance by the other of his promise the law now recognizes that in substance parties to an ordinary bilateral contract are not interested in a mere exchange of promises but that, normally, their real object is to secure an agreed exchange of reciprocal promised performances."

In the following section (813) the learned author says:

"It may be said that in a bilateral contract not only are the promises consideration for one another but that the parties contemplate that the performances promised also shall be exchanged one for the other. In other words, in the usual bilateral contract a double exchange is contemplated, first of promises and later of the respective performances promised. And just as a failure to give a promise on one side would entail invalidity of the counterpromise, so a failure to give performance on one side should on this view deprive the party in default of a right to enforce performance on the other side since the court in general must assume the respective performances were regarded by the parties as equivalent in value. Promises in an ordinary bilateral contract are, therefore, called in the Restatement of Contracts 'promises for an agreed exchange' and the phrase, as there used, 'means mutual promises in a bilateral contract where the performance promised by one party is the agreed exchange for the performance promised by the other party.'"

The rule, as so written by that learned author, is approved by Dean Evans of the Law Department of the University of Kentucky in an article referred to in the Watkins case wherein he said:

"Where the contract is found in the will or wills, the consideration given each testator for his will is the execution of the other of his will."

Every text writer, and all the courts so far as we have been able to discover, are in accord with the de-

clarations of Mr. Williston above quoted, and no conflicting case is cited by appellants. The facts in this case upon the question of consideration for promises to execute a mutual will between husband and wife are the same as existed in the Illinois case of Martin v. Helms, 319 Ill. 281, 149 N. E. 770, 772, which is referred to in the Watkins case supra. ''In that case the husband performed his agreement by validly executing his will as agreed upon, but the wife failed to execute her will according to the requirements of the law of that state, thereby rendering it illegal, and the court in construing the rights of the litigants said:

''The will here involved could not take effect as to Mrs. Helms. If she had died first, the instrument could not have been admitted to probate as her will, because it had not been executed in compliance with the statute. Her husband executed the will in consideration of her promise to execute it. She failed to keep her promise, and so the consideration of the husband's execution of the will failed.''

To the same effect is the opinion in the Colorado case of Ireland v. Jacobs, 114 Colo. 168, 163 P. 2d 203, 161 A. L. R. 1413, decided October 29, 1945. Also the rule on Williston on Contracts, supra, is approved in the Restatement of the Law, Vol. II, Subject Contract, sec. 339, wherein it is said:

''A total failure to receive the agreed exchange in the performance of promissor's contractual duty discharges that duty.''

We therefore conclude that the court correctly sustained defendant's demurrer to the petition as based on the ground that, notwithstanding there may have been a contract creating a trust as contended by appellants, yet the contract was not performed and no rights or obligation accrued therefrom to either party. Other points are argued and discussed in briefs of counsel, but the conclusion reached makes it unnecessary to refer to, much less determine them.

To adopt the contentions of appellants would, as we conclude, result in the ignoring of logic and the putting afloat well settled principles of the law upon raging and

turbulent waters of uncertainty without compass or rudder.

Wherefore, for the reasons stated, the judgment is affirmed.