The dispute in this case is between two groups, together comprising all the children of A. Wm. Graser and Frances Augusta Graser, both now deceased, and involves the title to seven tracts of land which constituted the bulk of their community and only estate. The principal question is what effect, if any, on Mrs. Graser's community half interest is to be given to a document, which was apparently intended to dispose of the property in question as the joint and mutual will of Mr. and Mrs. Graser. The instrument is entirely in the handwriting of and signed by Mr. Graser. It also bears a signature, which we will assume to be that of Mrs. Graser, and the signature of a third party unaccompanied by anything in the nature of an attestation clause. The instrument was evidently signed on September 30, 1930, and the body of it, copied line for line, reads as follows:
"9/10/30 Waco Tex
"This is our last Will Testament that we agree the last living from us both shall keep part lot 6-7, 94 ft 100 and all the Notes Cash money on hand. The other property shall be Devidet as follows Henry shall have the Bread and Cake mixer Value $500. Ernest shall have 1/2 lot of lot 3 block 10 in Barnes Mitchell Sup Dev. City block #854, Dallas Tex so long he is living an if he Dies single then the property go back to the other halve lot. Otto shall have 1/2 lot fronting Merlin St. Hous #2421. Dallas Tex August shall have Lot 10 block 8 Conachio Add Herman shall have 1/2 lot #5 — block 9 Conachio Add Fronting Crim St. Waco Tex Willie shall have 1/2 lot of #5 block 9 Conachio Add Waco Tex so long as he livest er his *Page 407 
Wife after the last is Death then the property shall be sold an equalty Divedet between August Herman Albert Otto Ernest. Albert shall have were the last one is living of the parents. but so long one of tem living He she shall have the benefit of all the property concernet."
Mr. Graser died in 1932, and Mrs. Graser promptly proceeded to probate the document as his will, procured appointment of herself as administratrix with the will annexed, qualify as such and file an inventory and appraisement, which was duly approved, including in it the seven tracts here in controversy. She took the latter into her possession, along with the notes and cash money on hand at her husband's death, and proceeded thereafter to exercise control over the property, collecting the full amount of the rents and using it all for her own benefit until she in turn died in 1939.
On her death, Albert Graser, one of the plaintiffs and respondents here, sought to probate the document in question as her will, but probate was denied because it was not holographic or properly witnesses as to her; no appeal being taken from that judgment. Administration was had on her estate, but both it and the proceedings incident to her prior deceased husband's estate were closed before the present litigation.
In the latter Albert Graser and four of the other children sought to establish and define as against their brothers Henry and Ernest, petitioners here, plaintiffs ownership of the lands described in the "will" as if that document were in fact the will of Mrs. Graser as well as of her husband, passing accordingly to the devisee named therein the interests described in the will with respect to both community halves of the property concerned. The defendant brothers took the position that, while the document was the will of their father, it was not that of their mother, who accordingly, and in fact as adjudged by the probate court, died intestate; so that the defendants were each entitled to one seventh of the mother's community one half as her heirs at law. This, of course, is more than they would get if her half passed like her husband's by the terms of the "will". They also prayed for partition in the event their claims should prevail.
At the close of the evidence, which evidently involved no disputed matters of fact, unless as to the intentions of the deceased *Page 408 
parents deducible from their undisputed acts, the defendants moved that the jury be discharged and judgment rendered in their favor, while the plaintiffs moved for an instructed verdict. The court thereupon discharged the jury and forthwith rendered judgment for the defendants. It also decreed partition, but found the premises not partitionable in kind and accordingly ordered a sale, appointed a receiver to conduct it, and made extensive provisions regarding division of the proceeds and costs, retaining jurisdiction for the purpose of carrying out these dispositions. The Court of Civil Appeals reversed the trial court and rendered judgment for the plaintiffs under the "will" as prayed for. 212 S.W.2d 859.
1 There is no dispute that the instrument in question, which was entirely in the handwriting of A. Wm. Graser and signed by him, was his will. In any case the question is foreclosed in this collateral proceeding by the final judgment of the County Court probating the document as his will. Aniol v. Aniol, 127 Tex. 576,94 S.W.2d 425. See also Nye v. Bradford, 144 Tex. 618,193 S.W.2d 165, 169 A.L.R. 1; Winston v. Griffith, 133 Tex. 348,128 S.W.2d 25. The same authorities compel the further conclusion that the subsequent final judgment of the County Court denying the instrument probate as the will of Mrs. Graser, establishes for all purposes here that it was not her will, even if we otherwise were inclined to different view, which we are not.
2 Neither is there any actual or possible assertion by the plaintiff-respondents that the instrument operated as a conveyance by Mrs. Graser of her community half to the devisees named in the instrument. The purely testamentary terms of the document, and its lack of the formalities required for a conveyance by a married woman plainly repel any such theory.
3 Nor do we think the case is or could be seriously urged as one within the familiar rule of equity prevailing in this state, that where a testator disposes by will of property not his own, and the will also provides benefits for the real owner which the latter would not otherwise enjoy, such owner may express or implied election to take under the will, cause his own property in question to be treated as if it had passed by the will. A fundamental prerequisite for the application of this rule is that the will shall purport to dispose of the property which the testator does not own. If it does not do so, there is plainly no basis for an election, and a beneficiary under the will may accordingly take whatever the will affords without any equities arising *Page 409 
against his own property. It is also prerequisite that as to the testaor's intent to dispose of property he does not own, the will shall "be open to no other construction", because "the law presumes that no man will attempt a testamentary disposition of the property of others." Avery v. Johnson, 108 Tex. 294,192 S.W. 542. The will in the instant case not only does not purport to dispose of Mrs. Graser's community half in the unequivocal fashion described in Avery v. Johnson but plainly does not purport to do so at all. If the instrument were the will of both Mr. and Mrs. Graser, then it would, as the joint and several act of both, dispose of the entire community estate, but, once we admit — as we must — that it is only the will of Mr. Graser, then it takes a different aspect. The intentions of Mrs. Graser cannot be considered, and Mr. Graser's intentions simply were, first, that his half should pass by his act or his part of the joint act, and that Mrs. Graser by joining should herself pass her half. If Mr. Graser had in mind exercising dominion over Mrs. Graser's property in such fashion that she would on his death have to choose between rejecting his disposition of her property and accepting what he gave her from his property, it was at least illogical to have her join in the instrument, because the natural explanation of her joinder would be that she was the one who was disposing of her own property. We think the most to be said for respondents on this aspect of the case is that the instrument shows Mr. Graser to have believed that, as executed by both him and his wife, it would operate to pass both community halves according to its terms. The fact that Mrs. Graser accepted benefits under the will, which she would not otherwise have enjoyed, realizing, as she probably did, Mr. Graser's belief that it was also her will, is not alone a sufficient equity on which to bind her half of the estate. We know of no decision, and none has been cited in the briefs, which holds to the contrary. Nor do we consider it prudent policy to extend our established rule of election so as to include a case like the present in which the will presents the alleged electing beneficiary with no clear choice, but in which the choice must be based merely upon an apparent assumption or expectation of the testator.
But respondents say with considerable force that the matter is not merely one of Mrs. Graser accepting benefits under the will with knowledge of her deceased husband's expectations, but is also a matter of a contract on her part, which is evidenced by the very terms of the instrument, and which, they say, neither she nor petitioners as her heirs may equitably repudiate after full performance by her husband and acceptance by her of the benefits of such performance. They point to Larabee v. Porter *Page 410 
(Tex. Civ. App.) 166 S.W. 395, error refused, and other respected decisions of this state, in which mutual wills validly executed by both parties are enforced against the survivor or the survivor's successors in interest on the ground of equity arising out of a contract performed by the death of the first testator to die and acceptance of the benefits thereof by the surviving testator. They argue in effect, that in such cases the true source of the equity that binds the survivor of the two testators is not the fact that both testators made valid wills but that they had a contract, the performance of which by the first one who died was accepted and availed of by the survivor; and that, since these elements of contract, performance and acceptance of benefits thereunder were all present in the instant case, Mrs. Graser's community half interest became bound by the terms of the instrument in question, even though it was not her will.
The precise question has not heretofore been adjudicated by our Texas appellate courts, and apparently those of only one state have had occasion to resolve it. See annotation in 161 A.L.R. 1419. The decision in In re Cole's Will, 171 N.C. 74,87 S.E. 962, referred to in the annotation and relied on by petitioners, is not in point, because the joint instrument there involved was not contractual in character, and the court merely held it to have been rightly probated as the will of the husband in whose handwriting it was written; the wife's ineffectual signature being treated as "mere surplusage", insofar as it might bear on the validity of the husband's act as such. But the case of Ireland v. Jacobs, 114 Colo. 168, 163 P.2d 203, 161 A.L.R. 1413, likewise discussed in the annotation and relied on by petitioners, is undoubtedly a holding that, under circumstances substantially the same as those of the instant case, the surviving wife took under the instrument as the will of her husband but despite its contractual or "mutual" character, was not bound by her own commitments in it, since it was defectively executed as her will. The essential reasoning of the opinion appears from the following quotation:
"* * * Was there any consideration? There was none named in the contract. This being true can it be said that one party to a contract is bound and the other is not? Without the testimony of the witness, Herr, the will, judging from its wording, contains consideration. The husband said, in effect, `I will leave everything I have to you if you will leave all you have to me.' She, in effect, said the same to him. They apparently agreed further that after the death of both the Trust was to go into *Page 411 
effect. There seemingly was a meeting of the minds; a contract was made.
"That Frederick should preced in death, was not forseeable; but assuming that Bertha had been called first, What then? Had she died first, and had Herr's testimony been the same, which we must assume, the will as hers, would have been denied probate. Frederick would then have taken as provided by statute and the agreement in the will would have failed for lack of consideration. To hold this contract valid, to hold that there was mutual consideration, it would be necessary for the trial court, or this court, to read into the will words that are lacking; to write into the will that Frederick's death prior to Bertha's was preordained. Even such far-fetched reasoning upon our part would be futile in the end, for while courts must interpret a will as best they can, they are powerless to draft and execute a will out of the whole cloth. If Bertha left no will there is nothing before us to interpret. Frederick's administrators would not have been bound by the will because there was none, and there being no promise for a promise the trust would fail. We think it is the law now everywhere that nominal consideration for almost any contract is sufficient. But we know of no law, anywhere, that a valid contract requires no consideration." 163 P.2d 206.
The theory of failure of consideration was also implied, with Ireland v. Jacobs cited as authority, in Puckett v. Hatcher,307 Ky. 160, 209 S.W.2d 742, which was an equitable proceeding to enforce, on the ground of contract, an instrument plainly intended to be a joint and mutual will but inoperative as the will of either party because of defective execution. There was no question of estoppel arising from one party's acceptance of the other's performance, since the instrument was never probated as the will of either. The court refused to enforce the agreement. In a case decided prior to Ireland v. Jacobs but involving the identical situation of the husband leaving a joint and mutual instrument properly executed as his will but not as his wife's will, the same theory was upheld as a valid reason to refuse probate of the document as the husband's will. The wife, who survived, would have taken the entire estate in fee had the will been admitted to probate, but under the decision, the property passing by intestacy, to be shared in accordingly by the contestants, who were brothers and sisters of the deceased Martin v. Helms, 319 Ill. 281, 149 N.E. 770. The same idea underlies the decision in Burkhart v. Rogers, 134 Okla. 219, 273 P. 246, where the wife died first but probate of the joint and *Page 412 
mutual will of herself and her husband as her will was refused, because it developed that the instrument, while validly executed as to both, had omitted provision for a forced heir of the husband and the will, as his will, was accordingly ineffective to carry out in full the reciprocal provision he had made in favor of his wife.
The rationale of Ireland v. Jacobs may not be sound and has been vigorously criticized in the state where it was rendered. See 18 Rocky Mt. L. Rev. 366. But, at least in a case like the present, where we have the additional element of children of the deceased testator or would-be testators, we think the result is in accord with our own peculiar institutions.
Our decisions involving the effect of validity executed mutual wills of two spouses do indeed speak as if an elemental reason for their enforcement is a contract — evidenced by the will itself or otherwise — between the spouses. Larrabee v. Porter, Tex. Civ. App., 166 S.W. 395, error refused; Kirtley v. Spencer, Tex. Civ. App., 222 S.W. 328, error refused; Chadwick v. Bristow,146 Tex. 481, 208 S.W.2d 888. And while these decisions all seem to entail the further prerequisite that the survivor shall by word or conduct accept benefits under the will as the will of the spouse who first dies, and at least one such decision (Sherman v. Goodson's Heirs, Tex. Civ. App., 219 S.W. 839, 841, er. ref., belittles the importance of the contract element, they all do suggest the inference that the underlying contract for mutual disposition of property is itself a valid agreement apart from the actual execution of the will or wills. See Rosetti v. Benevides, Tex. Civ. App., 195 S.W. 208, er ref.
It also appears to be true that under our laws, spouses may, at least under some circumstances, validly contract as between themselves that one will make a particular will or refrain from revoking a will already made. See Johnson v. Durst, Tex. Civ. App., 115 S.W.2d 1000, wr. dism.
4 On the other hand we have certain limitations on contracts between husband and wife as to disposition of the property of either or both. One of these is found in Art. 4610 R.C.S. which provides as follows:
"Parties intending to marry may enter into such stipulations as they may desire, provided they be not contrary to good morals or to some rule of law; and in no case shall they enter into an agreement, or make any renunciation, the object of *Page 413 
which would be to alter the legal orders of descent, either with respect to themselves, in what concerns the inheritance of their children or posterity, which either may have by any other person, or in respect to their common children; nor shall they make any agreement to impair the legal rights of the husband over the persons of their common children. No matrimonial agreement shall be altered after the celebration of the marriage."
While this statute on its face applies only to ante nuptial agreements, it has been held to include also those which are post nuptial. Johnson v. Durst, supra, and cases cited.
Art. 4610 evidently does not operate to inhibit the contract which is said to underlie mutual wills of husband and wife and without which no mutual wills would apparently be enforcable against the surviving testator. In Johnson v. Durst, supra, it was held that the statute did not prevent enforcement of an agreement whereby Mr. Johnson bound himself to devise property to certain beneficiaries in return for his wife's forebearance to change an existing will which was in his favor, the agreement having been carried out by the wife who predeceased Mr. Johnson. However, in that case, the court made the following statement which may well be pertinent to the present case:
"Clearly, the contract would have been void or voidable as to children of Mr. Johnson. But as he had none by either marriage, there was no one whose rights were deleteriously affected by the contract; and therefore no one to urge its invalidity." 115 S.W.2d 1005.
Since, under our laws, spouses may, generally speaking, disposes of their property respectively by conveyance or by will, including mutual wills, in such manner as they see fit, without regard to "the legal orders of descent" and even to the extent of disinheriting children, it would seem to be a legitimate inference that Art. 4610 is designed to apply to the case where an agreement to make a will or a mutual will or wills is not followed by actual effective execution of the necessary testamentary documents. In other words, if, in the instant case, we enforce the terms of Mr. Graser's will against Mrs. Graser's estate as her contract, to the prejudice of their sons, petitioners Henry and Ernest, we will be enforcing a contract in the teeth of Art. 4610. The terms of the contract obviously "alter the legal orders of descent" as regards Henry and Ernest, who are here vigorously complaining of such alteration. It is stated in cases like Ellsworth v. Aldrich, Tex. Civ. App.295 S.W. 206, er ref., *Page 414 
that an instrument may sometimes be enforceable as a contract though denied probate as a will (see also Nye v. Bradford, supra), but such cases merely deal with the technical effect of the act of probate or refusal to probate and are certainly no authority for the proposition that what could have been valid in a properly executed will is necessarily valid as a contract where the will fails merely because of defective execution. See Spinks v. Rice, 187 Va. 730, 47 S.E.2d 424. In the latter case the Supreme Court of Appeals of Virginia refused to enforce in equity as a contract an instrument which was in effect a joint and mutual will, but lacked the necessary testamentary formalities of execution on the part of both signers. The theory was not failure of consideration as in the similar case of Puckett v. Hatcher, supra, but public policy, which declines to make a contract out of that which was intended to operate only as a will.
The respondents argue that under Johnson v. Durst, supra, a contract in violation of Art. 4610 is not wholly void but merely voidable, and that the contract in the instant case having been ratified by Mrs. Graser after Mr. Graser's death, when she proceeded to probate the instrument as his will and accept benefits thereunder, she became estopped to contest its validity, and petitioners as her heirs stand in the same position. As to this, it is sufficient to say that it would deny the protection of the statute to the children, who are the very ones it was designed to protect. Possibly, if Henry and Ernest had themselves indulged in conduct raising an estoppel, the argument would be valid, but there is no evidence whatever that they did. And while Mrs. Graser herself, were she alive, might possibly not be heard to complain of her "contract" after receiving the benefits of its performance by Mr. Graser, we do not think it was intended for the children to be bound by her actions. As previously explained, the case is plainly not one in which a beneficiary elects to take under a valid will of another disposing of the beneficiary's own property. In such cases the legal result is that such property passes under the will as if it had always belonged to the testator, and accordingly the heirs of the electing beneficiary have no right to claim it as her property. Art. 4610 has no application to such a case.
We therefore conclude that the trial court was correct in rendering judgment for the petitioners, Henry and Ernest, as heirs of their mother, and that the Court of Civil Appeals erred in reversing that judgment. This conclusion naturally requires us to reverse the judgment of the Court of Civil Appeals. However, *Page 415 
the action of that court in rendering judgment for the plaintiffs, who were appellants there, caused it to forego passing on such of their assignments of error as were calculated merely to cause a remand or modification of the trial court's judgment. We must accordingly dispose of these remaining assignments, since they present questions of a kind within our jurisdiction.
5 The first is that the trial court erred in not submitting to the jury the question of whether the admitted facts in evidence, including the terms of the instrument in question, amounted to an election by Mrs. Graser to take under the instrument. It is true that election is normally a question of fact. Jones v. Guy,135 Tex. 398, 143 S.W.2d 906, 142 A.L.R. 77. However, such a question is of the "ultimate" type, being merely a final inference to be drawn from other facts and often referred to as "a mixed question of law and fact". Since there was no dispute about the terms of the "will" or what Mrs. Graser did to charge herself with an election, most of these matters being stipulated or admitted by the parties, the trial court was doubtless correct under the circumstances in treating the question as one of law. In any event, our holding that the doctrine of election to take under a will is not applicable to this case, precludes the submission of any question of election to the jury.
6 In that part of the trial court's decree dealing with the proceeds of the partition sale, it was ordered that, as to the life estates of respondent Willie Graser and wife in an undivided twelve-fourteenths interest in Tract 5, twelve fourteenths of the proceeds of the sale of said tract should be placed as corpus of a trust fund with a named bank, the income therefrom to be paid to Willie and wife for life, and, after death of the survivor of them, the corpus to be divided by the bank among certain of the other parties as remaindermen. Respondents, Willie and wife, complained as appellants below, that this method of adjusting their rights was improper in that they were entitled to the rental value of their interest as distinguished from interest on the proceeds of its sale and that, instead of an annual income from a trust fund, they should receive a lump-sum final settlement now, such sum to be the commuted value of their life interest based on their respective life expectancies. The rental value criterion can have no relation to the division, because there is no complaint that a partition sale was improperly ordered, and once a sale is had, the division is not one between owners of land with rental value but between owners of a common fund of cash. This question and the questions of whether Willie and wife should be paid a present lump sum, are both disposed of against them by the case of Swayne v. Lone *Page 416 
Acre Oil Co., 98 Tex. 597, 86 S.W. 740, 69 L.R.A. 986, in which this court stated as follows:
"But in no aspect of this case do we think that the plaintiffs in error have cause of complaint of the judgment of the Court of Civil Appeals. The right of the life tenant is to the use and not to the corpus of the estate; and where his title is in an undivided interest and not in the whole of the land and a sale is ordered for partition, his right in this proceedings is not a part proportionate to the undivided interest in which he has the life estate, but to the interest on that part as long as the life estate may continue to exist. In speaking on this subject in reference to the remaindermen, Chief Justice Marshall in Herbert v. Wren, 7 Cranch, 379, says: `They have a right to insist that, instead of a sum in gross, one-third of the purchase money shall be set apart, and the interest thereof paid annually to the tenant in dower during her life.' The rule thus stated is followed in North Carolina. Ex parte Winstead et al,92 N.C. 703. The same principle is announced in Alabama. McQueen v. Turner, 91 Ala. 273; Kelly v. Deegan, 111 Ala. 152. As to securing the life tenant in the use of the part of the proceeds in which he has an interest, the North Carolina court follows the rule indicated by the remarks of Chief Justice Marshall, above quoted. The Alabama court, however, permits that part to be paid to him upon his executing a properly secured refunding bond conditioned to pay the principal to the remainderman upon the termination of his estate.
"In the case of Clift v. Clift, 72 Tex. 144, Mrs. Clift had a one-sixth interest for her life in a town lot, and this court adjudged that the property should be sold, and that from the proceeds `there should be paid to Mrs. Clift a sum equal to a one-sixth interest for life in the proceeds of the land proper.' Since the proceeds of the sale must be money, and the value of the use of the money is determined by the interest upon it, it follows that this recognizes the same right in the life tenant which was announced in the cases before cited, but lays down a different rule for securing that right. As to this last matter, the rule announced by this court may be questionable; but so far as we can now see, and so far as the writer of this opinion can recollect, that point was not mooted in that case." 98 Tex. 608.
The quoted language is in a sense dictum, since the issue in the case was whether the life tenant was entitled to oil royalties from the land as distinguished from interest on such royalties, but the court evidently based its holding, in part at least, *Page 417 
on the correctness of the subsidiary legal propositions above quoted, and the reputation of Chief Justice Gaines is such as to warrant considerable respect even for his dicta. There might be instances in which it would be more equitable to allow life tenants the commuted value of their interest, but in this instance it was not error to dispose of the matter as the trial court did. We do not think the language of Rule 770 T.R.C.P. and its predecessor statute, Art. 6096 R.C.S., requires a contrary holding. The word "partitioned" in the statement that the proceeds of sale shall "be partitioned among the persons entitled thereto, according to their respective interests," does not necessarily imply that every part owner shall then and there get a final cash equivalent of his rights. The trust device adopted by the trial court clearly set apart and provided for the prompt enjoyment of the interest of the complaining respondents and was a more certainly accurate division than payment of the commuted value, since the latter is based only on probabilities, while the former will be measured by actual lives. There is no complaint on the part of the remaindermen, whose enjoyment of the corpus will, of course, be postponed until the death of Willie and wife.
7 Respondents Willie and wife, also assigned error below to the provisions of the trial court's decree regarding the costs applicable to the partition proceedings (as distinguished from those of the title controversy) in that these respondents, as owners of a share corresponding to their above mentioned life estate in Tract 5, are to be taxed on the basis that said tract is of equal value (and presumably will bring an equal price in the partition sale) with the other six tracts under partition, whereas the only pertinent evidence in the record indicates Tract 5 to be of substantially less value than most of the others. The correctness of this latter statement is suggested by the court's findings based on the agreement as to the rental values of the respective tracts. Rule 778, T.R.C.P. provides that partition costs shall be "paid by each party to whom a share has been allotted in proportion to the value of such share." The decree of the trial court did distribute the total partition costs (principally the receiver's fee of $500.00) between all seven tracts on the basis of one seventh for each tract; respondents, Willie and wife, accordingly bearing close to one seventh of the total partition costs, although the value of their portion is probably less than one seventh of the total value of all the shares. If it should develop, as it well may, that on the basis of the actual proceeds of the partition sale or sales, said respondents will, under the decree as now written, have to pay as to Tract *Page 418 
5 a substantially larger sum than would be payable by them if each recipient of a share in the entire proceedings, including respondents Willie and wife, were taxed in proportion to the amount or value of his or her share respectively, this discrimination should be removed, and the court is directed to modify its decree accordingly. Jones v. Mask, Tex. Civ. App.,196 S.W.2d 693.
The judgment of the Court of Civil Appeals is reversed. The judgment of the trial court is directed to be modified in the detail last above discussed and, as so modified, is affirmed. No costs, however, are allowed the respondents in this court by reason of the modification mentioned, the value of such relief being relatively inconsequential.
Opinion delivered December 8, 1948.
Rehearing overruled January 12, 1949.