**TEXAS EASTERN TRANSMISSION CORPORATION, Appellant,**

v.

**Orville CARMAN and Augusta Carman, Appellees.**

Court of Appeals of Kentucky.

June 20, 1958.

Rehearing Denied Aug. 5, 1958.

Joseph E. Stopher, A. J. Deindoerfer, Boehl, Stopher, Graves & Deindoerfer, Louisville, Pat Rankin, Stanford, for appellant.

Robert M. Spragens, Lebanon, James F. Clay, Danville, Harris C. Rhodes, Cabell D. Francis, Stanford, James G. Sheehan, Jr., Danville, for appellees.

STEWART, Judge.

This appeal by Texas Eastern Transmission Corporation (hereinafter called "Texas Eastern") is from a judgment dismissing its complaint wherein it sought an injunction against appellees, Orville Carman and Augusta Carman, to restrain them from obstructing the right claimed by it to lay an additional pipe line across their lands. The proper interpretation of an easement agreement has given rise to this controversy.

On April 7, 1951, for a valuable consideration, appellees granted Texas Eastern, its successors and assigns, a right of way "to construct, lay, maintain, operate, alter, repair, remove, change the size of, and replace pipe lines and appurtenances thereto, * * * for the transportation of oil, gas, petroleum products or any other liquids, gases, or substances which can be transported through pipe lines, the grantee to have the right to select, change, or alter the route under, upon, over and through lands" which appellees own or in which they have an interest.

Following a description of the property this provision appears:

"By the terms of this agreement, grantee has the right to lay, construct, maintain, operate, alter, repair, remove, change the size of, and replace at any time, or from time to time, one or more additional lines of pipe and appurtenances thereto (including without limitation corrosion control equipment). Provided, however, that for each additional line laid after the first line is laid hereunder grantee shall pay grantors, their heirs or assigns, one dollar per lineal rod of additional pipe line laid under, upon, over or through the property described in the agreement."

In the early part of 1952, pusuant to this agreement, Texas Eastern installed a pipe line through the property of appellees, and, since the completion of this line, has operated and maintained it. Texas Eastern now proposes to lay an additional pipe line, known as a "loop line", easterly of, parallel to, and 25 feet from the first line under and across the property of appellees. Preparatory to this undertaking, Texas Eastern tendered to appellees the $1 per lineal rod provided for in the above quoted provision. This tender was rejected and Texas Eastern was denied access to appellees' lands.

Appellees having refused entry upon their lands to Texas Eastern, its contractors and their agents and employees, for the purpose of constructing the second line, Texas Eastern sought in circuit court to enjoin appellees from preventing or interfering with its alleged right to install the additional pipe line in conformity with the easement agreement.

The lower court, after hearing proof, found and adjudged that the evidence did not show it was in the contemplation of the parties that the second line should be laid "within the limits of the original easement granted". In the findings of fact, the trial judge also found that, in the negotiations between the land owners and the agents of Texas Eastern at the time the easement was procured, there was no understanding as to where one or more additional lines of pipe would be laid. The judgment pronounced the grant in the easement of the right to lay an additional pipe line void for indefiniteness, and dismissed the complaint for failure to state a claim upon which relief might be granted.

Texas Eastern has appealed from this ruling, insisting that the unambiguous language of the instrument grants it the right to construct additional lines across the lands of appellees. We believe Texas Eastern's contention has merit.

In the recent case of Sorrell v. Tennessee Gas Transmission Co., Ky., 314 S.W.2d 193, which in our opinion is determinative of the issue of ambiguity raised here, the provisions of an instrument similar in practically every respect to those under consideration in the case at bar were subjected to attack because they were asserted to be vague and indefinite and therefore unenforcible. The particular language the Sorrells contended was invalid as vague and indefinite was that which bestowed upon Tennessee Gas Transmission Company the right to lay "at any time or from time to time one or more additional lines of pipe". The easement in the Sorrell case, however, did not require additional lines to be located parallel to any lines already laid; in the instant case the agreement is silent as to where any future lines and appurtenances may be placed. Nevertheless, Texas Eastern has agreed it will locate the additional line in controversy parallel to and in close proximity to the existing line.

We held in the Sorrell case that the agreement granting a multiple pipe line easement on and over Sorrell's property was definite and unambiguous in its wording. In that case we also held that the instrument conveyed a presently vested easement which conferred the right to construct additional lines across the property at any time in the future. Under the authority of the Sorrell case we conclude the language of the easement agreement under consideration contemplated the laying of multiple

lines across the property of the Carmans, as the language granting the right to lay more than one line is stated so simply and clearly as not to be misunderstood.

■ On October 12, 1957, this case was before us on a motion to dissolve temporary injunctions. By order of that date, we dissolved the injunctions and directed the trial judge to hear the case further "on the issue of whether or not the proposed new pipe line is to be located within the reasonable bounds of plaintiff's originally granted right of way". Perhaps the language we used in this order was not sufficiently clear and the lower court misconstrued it to mean that evidence should be heard on the parties' disclosed intentions at the time the agreement was entered into. This resulted in the finding, in the judgment before us, that the parties did not contemplate any additional pipe lines within the original right of way granted.

What was in the minds of the parties at the time the easement agreement was executed relative to the intentions of the parties must be determined from the context of the agreement itself, since it is manifest the language of the instrument is not ambiguous. See Puckett v. Hatcher, 307 Ky. 160, 209 S.W.2d 742. The lower court therefore committed an error when it went outside the easement agreement to ascertain extraneously its meaning and effect, because the result was an interpretation of the instrument inconsistent with the clear and definite language employed in it.

■ A proper question for determination is whether the proposed location of the second line by Texas Eastern is in such reasonable proximity to the first one, as under good engineering practice and procedure would be sufficient and proper for the accomplishment of the purpose of the easement, namely, the construction, maintenance and operation of a pipe line or lines in addition to the first line.

■ It is a settled rule of the law of easements that if the location of a right of way is not defined by the grant, a reasonably convenient and suitable way is presumed to be intended. See 17A Am.Jur., sec. 101, p. 711; 28 C.J.S. Easements § 80, p. 760. The authorities do not differ in that what constitutes a right of way of the character involved here depends upon the condition of the place and the purposes for which it was intended, subject simply to the provision that the location must be reasonable as respects the rights of the grantor as well as those of the grantee. See 28 C.J.S. Easements § 80, p. 760.

In this case, the written agreement not only provided for a right of way for a single line, sufficient in the light of the experience of those engaged in the gas pipe line business, but for additional space for laying other lines, as the needs and conditions might require, and at the same time fixed the rate of compensation to be paid to the land owners for such additional rights of way.

Evidence introduced by Texas Eastern, which is no where contradicted by appellees in the record, established that a 75-foot working area must be used to construct a line of the type under consideration; that a 30-foot area is necessary to maintain such a line; and that ordinarily and generally 25 feet from the first line is the proper reasonable distance at which to locate the second line. It was brought out in the evidence that the second line is not actually a second full or complete line, but what is known in the pipe line industry as a "loop line", originating from the first line, running parallel at a distance away from the first line and then joining the original line again.

We believe the foregoing estimates as to the amount of space needed to construct, lay and operate the proposed second pipe line on appellees' land are not unreasonable when we take into account the undisputed proof.

■ At a hearing in this case on a motion to dissolve the temporary injunctions the argument was advanced that the agreement gave only an option to purchase an easement at an indefinite future time and for this reason violates the rule against perpetuities. This theory is completely rebutted in the Sorrell case, cited above, and we refer to the opinion of that case for any further discussion on this point.

Wherefore, the judgment is reversed with directions that it be set aside and a new one entered in conformity with this opinion.

MONTGOMERY, J., not sitting.