RENDERED: APRIL 21, 2023; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2021-CA-0705-MR

DELCIE ENDICOTT                                                              APPELLANT

v.              APPEAL FROM FLOYD CIRCUIT COURT
                HONORABLE THOMAS M. SMITH, JUDGE
                ACTION NO. 20-CI-00307

BILLY BURCHETT AND BRENDA
BURCHETT                                                                    APPELLEES

OPINION
AFFIRMING

** ** ** ** **

BEFORE: CALDWELL, ECKERLE, AND KAREM, JUDGES.

CALDWELL, JUDGE: The Appellant, Delcie Endicott (Endicott), appeals from

the trial court's order following a bench trial. Endicott had filed a petition to quiet

title on property she purchased at a master commissioner's sale. Endicott was

seeking interpretation of an express easement to allow her greater access to the

property than the owners of the servient estate, Billy and Brenda Burchett (the

Burchetts), would allow. We affirm the trial court.

# FACTS

In 1976, Brenda Burchett's parents, Isaac and Lillian Blackburn (the Blackburns), granted a portion of their property to Brenda and her husband, Billy. The Blackburns reserved an easement over that portion of land deeded to the Burchetts to allow for access to a Blackburn family cemetery located upon the property granted to the Appellees.

After Isaac Blackburn passed away,[1] a master commissioner's sale was conducted to auction off the dominant estate; the reason for the auction is not determinable by the record. Billy Burchett testified that he bid on the property but was not the high bidder. Delcie Endicott was the high bidder and won the property at the auction.

When Endicott went to inspect the land, she was unable to go upon it due to a locked gate on the Burchetts' land, which prevented ingress onto her new property. Endicott filed a petition to quiet title, seeking access to the land she had purchased, and which access she alleged the Burchetts were preventing.

The Burchetts alleged that they had not prevented Endicott access to the property. They also alleged that Endicott was attempting to set up a commercial operation upon the land consisting of a pay lake. They objected to

---

[1] From the record, it appears his wife predeceased him.

Endicott being granted use of the roadway to support a commercial operation and insisted the roadway easement was only for personal use.

Following the bench trial, the trial court entered findings of fact and conclusions of law and held that Endicott was entitled only to access to the land by virtue of the easement in the deed, which allowed for a roadway only for personal use. Endicott has appealed this determination. We affirm.

## STANDARD OF REVIEW

Because the underlying order was issued following a bench trial, we review the finding of facts for clear error. We review any legal conclusions *de novo. See Barber v. Bradley*, 505 S.W.3d 749, 754 (Ky. 2016).

> Our review of a circuit court's findings of fact following a bench trial is to determine whether those findings are clearly erroneous. [Kentucky Rule of Civil Procedure] CR 52.01. This rule applies with equal force to matters involving boundary disputes. *Croley v. Alsip*, 602 S.W.2d 418, 419 (Ky. 1980). Factual findings are clearly erroneous if unsupported by substantial evidence. *Moore v. Asente*, 110 S.W.3d 336, 354 (Ky. 2003). Substantial evidence is defined as "that which, when taken alone or in light of all the evidence, has sufficient probative value to induce conviction in the mind of a reasonable person." *Bowling v. Natural Resources and Environmental Protection Cabinet*, 891 S.W.2d 406, 409 (Ky. App. 1994) (citations omitted).
>
> Our role as a reviewing court prohibits us from disturbing the circuit court's factual findings that are supported by substantial evidence, despite whether we would have reached a contrary conclusion. *Moore*, 110 S.W.3d at 354. We defer to a significant degree to the circuit court,

> for it had the opportunity to observe, scrutinize, and assess the credibility of witnesses. CR 52.01. Notwithstanding the deference due the circuit court's factual findings, its conclusions of law, reached after making its findings, are reviewed *de novo. Hoskins v. Beatty*, 343 S.W.3d 639, 641 (Ky. App. 2011).

*Bishop v. Brock*, 610 S.W.3d 347, 350 (Ky. App. 2020).

## ANALYSIS

At the outset, we note that the Burchetts have asked that we dismiss this matter because Endicott failed to file a designation of record pursuant to the former CR 75.01. We note that no video record was certified as contained in the record by the local clerk and none was transmitted to the Clerk of this Court as part of the record on appeal. Despite this, Endicott has included citations to a video record in the brief.

In the Rules of Appellate Procedure (RAP), now applicable, the onus does not appear to be on Endicott to certify that the video proceedings of the trial should be included in the record on appeal. Rather, RAP 24(A)(3) makes it clear that the record should automatically contain the video recording of the trial. "Official recordings of the trial that results in the order or judgment being appealed from shall be certified as a part of the record on appeal." *Id.* Despite this, RAP 24(B)(1)(a) requires an appellant to file a designation of record to assist the clerk in ensuring the record includes all necessary items.

-4-

(a) Contents of Record Designation.  Appellant or counsel for appellant, if any, shall provide the clerk of the trial court with a designation listing with specificity the dates on which official recordings were made for all pre-trial and post-trial proceedings necessary for inclusion in the record on appeal.  While trial recordings are part of the record on appeal regardless of designation, to facilitate the timely preparation and certification of the record, the parties should list the date(s) of any trial proceedings.

*Id.*

There were no recordings included in the record on appeal in this matter.  Under the prior rules, in existence at the time the parties filed their briefs, it was Endicott's responsibility to ensure the record was complete.

Appellant has a responsibility to present a "complete record" before the Court on appeal.  *Steel Technologies, Inc. v. Congleton*, 234 S.W.3d 920, 926 (Ky. 2007).  "Matters not disclosed by the record cannot be considered on appeal."  *Montgomery v. Koch*, 251 S.W.2d 235, 237 (Ky. 1952); *see also Wolpert v. Louisville Gas & Elec. Co.*, 451 S.W.2d 848 (Ky. 1970) (holding that our predecessor court could not review contentions of prejudice before the jury when the only basis for the argument was the Appellant's brief, because review is confined to the record).  Appellant may not raise allegations of error on appeal "based entirely on a silent record."  *Commonwealth v. Thompson*, 697 S.W.2d 143, 144 (Ky. 1985).  Further, "[i]t has long been held that, when the complete record is not before the appellate court, that court must assume that the omitted record supports the decision of the trial court."  *Id.* at 145.

*Hatfield v. Commonwealth*, 250 S.W.3d 590, 600-01 (Ky. 2008).

As we cannot review the bench trial, we will constrain our review of error to a review of the findings of fact and conclusions of law and order issued by the trial court. The trial court found that the Burchetts obtained the servient estate from the Blackburns in 1976, when the servient estate was carved from their property, the remainder of which became the dominant estate. The Blackburns reserved the right to enter upon the property to access the Blackburn family cemetery, contained upon the servient estate granted the Burchetts. The dominant estate was the subject of a master commissioner's sale conducted after the Blackburns had passed away.

The trial court found that Endicott was the highest bidder at the auction of the dominant estate and that when she went to attempt to inspect the property, she was unable to gain access to the property. The Burchetts denied locking a gate on their property, but acknowledged a gate was erected across the easement. The trial court found that Endicott's son intended to operate a pay fishing lake upon the property his mother had obtained and that the easement was necessary to stock the lake and to allow customers access to the lake.

The trial court concluded that such use was unreasonable and would be too burdensome. The court ordered that Endicott be allowed use of the easement for her personal use only.

The terms of an easement are determined by the language of the document granting the right. The deed executed by the Backburns in 1976 granting to the Burchetts the two-acre parcel contained an express easement, to wit, "It is understood that the first party is to have a road-way expected (sic) for land being owned above." The trial court found this easement to be a latent ambiguity in that it was not clear whether the present roadway was in the same place as the easement referred to in the 1976 deed. The trial court relied upon Mrs. Burchett's testimony that the present roadway was in substantially the same location it was when her parents granted the land. The trial court found that the granted easement ran with the land and Endicott obtained the parcel with the easement for access when she won the bid at the Commissioner's sale. *See Meade v. Ginn*, 159 S.W.3d 314, 321-22 (Ky. 2004).

The trial court constrained Endicott's use thereof in compliance with the original easement – to have access to the land beyond it, but not for any commercial operation. We find that to be a reasonable conclusion.

> In the case of an express easement, such as is present in the instant case, the terms of the conveyance determine the rights and liabilities of the parties. *See Texas E. Transmission Corp. v. Carman*, 314 S.W.2d 684, 687 (Ky. 1958) (citing *Puckett v. Hatcher*, 307 Ky. 160, 209 S.W.2d 742, 744 (1948)). If the language is unambiguous, the intent of the parties at the time the easement agreement was executed must be determined from the context of the agreement itself. *Id.* An easement confers a right upon the dominant tenement to

enjoy a right to enter the servient tenement. *See Scott v. Long Valley Farm Kentucky, Inc.*, 804 S.W.2d 15, 16 (Ky. App. 1991).

While an easement holder may not *expand* the use of the easement, it is equally true that the easement grantor may not interfere with the easement holder's use of the easement. *Commonwealth, Dept. of Fish and Wildlife Res. v. Garner*, 896 S.W.2d 10, 13-14 (Ky. 1995).

With respect to an express easement for a road or passway, our law holds that the servient owners must permit the free and unrestricted use of the passway by the owners of the dominant estate. *Sandman v. Highland*, 312 Ky. 128, 226 S.W.2d 766, 768 (1950) (citing *Jenkins v. Depoyster*, 299 Ky. 500, 186 S.W.2d 14 (1945); *Wells v. N.E. Coal Co.*, 255 Ky. 63, 72 S.W.2d 745 (1934); *Kentucky & West Virginia Power Co. v. Elkhorn City Land Co.*, 212 Ky. 624, 279 S.W. 1082 (1926)). While it is true that the owners of the dominant estate must use their right so as to be as little burdensome as possible to the servient estate, *id.*, it is nevertheless also true that the owners of the easement are not strictly limited to purposes for which it had been historically used. *Cameron v. Barton*, 272 S.W.2d 40 (Ky. 1954).

*Sawyers v. Beller*, 384 S.W.3d 107, 111 (Ky. 2012).

## CONCLUSION

We find that the trial court properly found that it would be unduly burdensome to the servient estate to allow Endicott to use the easement to conduct a commercial operation. We affirm the trial court's order, interpreting the easement contained in the original deed, to allow only for a roadway over the

servient estate of the Burchetts to allow Endicott access to the land obtained at the master commissioner's sale.

ALL CONCUR.


BRIEF FOR APPELLANT:

Timothy A. Parker
Prestonsburg, Kentucky

BRIEF FOR APPELLEES:

Ned Pillersdorf
Prestonsburg, Kentucky