WILL.

*Case* 134.

## Breathitt *vs* Whittaker's Executors.

### ERROR TO THE LOGAN CIRCUIT.

*Power. Wills. Joint powers.*

July 26.

A will of a son gave estate in trust for the 'father and mother during their lives, and the life of each of them,' with a clause that 'it is his will that his parents shall dispose of said estate by last will and testament,' &c.

CHIEF JUSTICE MARSHALL delivered the opinion of the Court.

THIS writ of error is prosecuted for the reversal of a sentence or decree of the Logan Circuit Court, affirming an order of the Logan County Court, by which a writing purporting to be the last will and testament of William W. Whittaker and Penelope Whittaker, his wife, was admitted to record as their will. The writing thus admitted to probate, has its effect, if at all, as being in execution of a power conferred by the will of H. R. Whittaker upon his father and mother, by whom said writing was executed. By that will H. R. Whittaker gives his estate in trust for the sole use and benefit of his father and mother "during their lives, or the life of each of them, and authorises the trustee to sell any portion of the estate at the request of said parents, the proceeds to be disposed of according to their wishes." The testator then proceeds to say, "it is my will that my parents shall dispose of said estate by last will and testament, and in the mean time, to give to each child as in their discretion they may think proper."

In January, 1841, a joint will was duly executed by both of the donees of this power, and attested by two witnesses in their presence. In January, 1845, Mrs. Whittaker died, and in August, 1846, Wm. W. Whittaker, a few days before his death, produced this will, which had been torn into three pieces crossing the lines, but afterwards carefully stitched together with fine

white thread, so that every word is legible, and the entirety of the instrument restored. He at the same time produced another will, dated early in 1842, which had his signature, and the attestation of two witnesses, but is shown not to have been duly executed by his wife, and directing this last paper to be burnt, which was done immediately in his presence; he acknowledged the torn will of 1841, to be his will, and had it attested by a third witness, saying that his wife had been dissatisfied with the first will, and had torn it, but had afterwards become reconciled to it, and had sewed it together. The same witness had also attested the will of 1842, and says it was like the other, except that it contained one additional legacy of small magnitude.

Upon these facts, we think there can be no doubt that the torn will was properly admitted to record, at least as the will of Wm. W. Whittaker, who having both wills in his possession, duly attested as to himself, made the first his true and only last will, by the very fact of destroying the second. We do not admit that the mutilation of the first will rendered it necessary that it should be re-attested by two witnesses to give it life and efficacy. The careful preservation of it by the testator, and its almost complete restoration, and his declaration that this was his will, accompanied by the destruction of the other, would, in the absence of all explanation, sufficiently prove that he never had absolutely revoked it, but held it still subject to his own choice between that and the other. The fair presumption would be too, that the mutilation had occurred by accident, or at least against his will, or without his consent, and that although the second will may have been intended as a substitute for the first, with a slight variation, from which it might be inferred that he acquiesced in the mutilation, the fact that he retained both and restored the first, shows that this acquiescence was at most but conditional. And the inference of revocation arising from such acquiescence in a mutilation which was remedied as far as practicable, is no stronger than a similar inference arising from the execution of a second will expressly revoking a previous one. But, if in such case, the second

will is finally destroyed, with the purpose and intention of abiding by the first, the first will stand as if the second had never existed. Indeed, if at the death of the testator, a will duly executed and attested is found in the proper place, and no other will is found, the fact that another will had been duly executed and attested after the first, but which is not found, would of itself be wholly unavailing against the establishment of the will which is produced. And although the fact that the writing produced for probate appears to have been mutilated, would require explanation whether there had or had not been another duly executed as a will, the facts that it was carefully retained by the testator in a condition rendering its identity unquestionable, and that he treated it as his will and declared it to be such, would be sufficient if there had been no other will, and their import would be strengthened by the fact of the destruction of another perfect will, if there was one, for the purpose of setting up the mutilated one.

But the evidence furnishes, from the statements of Wm. W. Whittaker himself, the further explanation, that his wife had become dissatisfied with the first will and had torn it, in consequence of which, (and to please her,) he had made the other will, but that she had become reconciled, and had sewed together the pieces of the first will. These facts, if competent evidence in the case, (as they were objected to by Breathitt,) do not produce any substantial difference so far as relates to the question whether this mutilated writing is the true last will and testament of Wm. W. Whittaker. But it is contended that they show a revocation of the first will by Mrs. Whittaker at least, if not by both, and that the power of disposing of the estate by will being given to them jointly, and not being attached to any interest in them, did not survive, but became wholly extinct on the death of the wife, and that as the husband had afterwards no testamentary power over the estate, and had no separate power at first, this mutilated will having been revoked by the wife, was entitled to no effect, and in fact was no will under the power conferred upon the two, whether it be considered as having

remained unrevoked by the husband or as having been resuscitated by his subsequent acknowledgment of it after the death of his wife.

If the power was joint and several, or if being joint only, it survived to the husband, we think it follows, from what has already been said, that the mutilated paper was properly admitted to record as his will, and that it is as such, effectual to dispose of the estate devised, over which the power was given. And as it does not dispose of any other estate, and certainly not of any estate belonging separately to the wife, the technical error of admitting the will to probate as the will of both husband and wife, would scarcely be a sufficient ground of reversal even if it were not the legal will of the latter.

But we are of opinion, upon all the facts developed by the testimony, that there never was an absolute revocation even by the wife. In the absence of the explanatory facts, the presumption arising from the condition of the paper itself, would be no stronger in favor of a revocation by her than of a revocation by the husband; but the inference from the execution of a second will would be weaker as to her, because the second will was never duly executed by her. And the restoration and preservation of the paper in the proper custody, and its production by the husband as the will of both, as it purports to be, would suffice to establish it as to both. For by force of the statute a will once duly executed and attested, remains the valid will of the parties, and is effectual, as such, after their death, unless it has been effectually revoked.

*After a will is duly executed, the making of another will which is not duly executed, is no revocation of the first. Tearing a will duly and formally executed and then restoring it again by carefully sewing it together, preserving and leaving it at death, is satisfactory to show the intention to preserve it as a will.*

Then it appears by the statement of Wm. W. Whittaker, that his wife having become dissatisfied, had torn the will, in consequence of which he had written another; but that she became reconciled to the first and sewed it together, &c. The inference is, that having torn the will in a moment perhaps of excitement, but not in such a manner as to destroy its identity, she retained it for the very purpose of consultation with her husband and of restoring the paper to its entirety if that should be the result of their joint councils, and

should be found practicable, or of making a new will. If she had determined upon an absolute revocation, why did she not utterly destroy the will? And why was it retained and in fact restored? We have already given what seems to be the rational answer to these questions. And when it is observed that the second will never was duly executed by her, and that if the first was, as contended, absolutely revoked by her with the effect as contended, of depriving it of its efficacy as an execution of the power, there was never afterwards a valid appointment according to the will of H. R. Whittaker, we think the sound conclusion from all the facts is, that Mrs. Whittaker did not deliberately intend, by her own separate act, to revoke the joint will of herself and husband, but repenting of what she had done before it was too late, submitted the question to the result of future joint deliberation and action. · And in this view, the will never was, in fact, revoked by her.

But there is still a more fundamental question, and that is, whether she could, by her separate will and act, destroy the joint act of herself and husband? Assuming, as the opponents of the will contend, and as we are inclined to think, that the power was joint and not joint and several, and that neither could execute it separately, by his own will, but there must have been a concurrence of minds and of action, to make a valid will under the power, we are of opinion that the proper legal and logical consequence of this assumption is, that when both have once concurred in an execution of the power by a joint will, valid as such under the power and under the law, it is not subject to revocation by the separate act of either. The same considerations which prove that neither could dispose of the estate separately, and that the power, though wholly unexecuted, would not have survived to one on the death of the other, prove also that neither could, by his separate act, change the disposition made or indicated by the joint act. If the joint judgment and affections of both parents were relied on for a judicious distribution of the property, the result of that joint judgment and feeling

*Two, husband and wife, are authorized to dispose of estate by will—they jointly make and duly execute a will, it is not in the power of either, by separate act, to revoke the will so made.*

was surely to be placed above the reach of the separate will or judgment of either. The power indeed, does not in its terms, include a power of revocation which is only implied from the nature of the act to be done, namely, the making of a will which is revocable by law. And must not the implied power be of the same nature as that which is expressed? Will a joint power to two afford or allow of the inference that after a concurrence of both in a valid execution of it, each has a separate power to defeat the joint act?

The power of revoking a will is in truth, but a part of the testamentary power. To revoke is an equal exertion of power as to make. And it must be the exertion of the same power, of the same mind. If two minds must unite in making a will, the same two minds must unite in revoking it. If two persons be authorized to do a single act which can only be done by the concurrence of both, they are, as to that act, one agent— the two minds must have one will to do the act, and if it be in its own nature revocable, it must require the same concurrence to revoke it. If a joint power is given to two to do a particular act, and the same to revoke at pleasure, both must concur in the revocation. And we cannot perceive that the nature of the power is altered by the fact that the joint act, though valid unless revoked, does not take effect so as to confer an interest on third persons until a future period.

We are of opinion, therefore, that even if Mrs. Whittaker did any act which was, so far as she was concerned, an absolute revocation, it did not and could not revoke the joint will, unless done with the consent of the husband for the purpose of revocation, or so acquiesced in by him as to become a revocation by both. This, in effect, brings back the question whether there was a revocation by him. And without recapitulating the arguments on this question, we are satisfied that there was not.

In every view of the case, therefore, we are of opinion that there is no ground for reversing the sentence or decree admitting the will to probate, as the will of

Wm. W. and Penelope Whittaker, and the same is affirmed.

*Robertson and Morehead & Reed* for plaintiff; *J. & W. L. Harlan and Kincaid* for defendants.