## Watkins et al. v. Covington Trust & Banking Co. et al.

January 14, 1947.

William J. Deupree, William J. Deupree, Jr., and M. H. McLean for appellants.

Charles Adams for appellee Covington Trust & Banking Co.

Helm Woodward for appellee Covington Protestant Children's Home.

OPINION OF THE COURT BY JUDGE CAMMACK—Reversing.

In May, 1932, Jacob F. Hooler and his wife, Barbara, duly executed a joint will, the first two paragraphs of which follow:

"I. We hereby bequeath and devise each to the other and to the one of us surviving all of our estate jointly or singly owned, for the lifetime of the survivor with full right, power and authority to the survivor to sell or dispose of any part thereof for purposes of in-

vesting or reinvesting, or if there be any need therefor on the part of the survivor, to use such part of the principal herein devised for life, as the requirements of the survivor may demand and said survivor is given the right, power and authority to convey real estate and to assign and transfer stock or other securities without the intervention of any Court.

"II. On the death of the survivor and at the termination of the life estate herein created in the first paragraph hereof, the Executor of the survivor hereinafter named, is directed to sell and dispose of the entire estate coming into its hands, real and personal, at private or public sale and said Executor is hereby given full power and authority to make such sales and to execute the proper and necessary deeds, transfers or assignments to carry out and complete same. Out of the proceeds of said estate arising from said sales, or from whatever other source same may be derived and after the payment of all debts and the expenses of administration, the hereinafter enumerated bequests are made and we direct that same be pro-rated should the estate not be sufficient to pay same in full; said bequests are as follows, to wit: * * *."

Following these two paragraphs there are some 26 separate bequests to certain individuals and institutions. The appellee, Covington Trust & Banking Company, was designated as the executor of the survivor. In November, 1932, the Hoolers prepared a codicil to their will wherein they changed some of the bequests. The codicil also contained the following provision:

"Item XXXII. The survivor of us shall be the sole judge of his or her right to use such part of the principal devised for life, as the requirements of the survivor may demand, devised in Item I of the original will, and should the survivor in the exercise of such judgment use any part of the principal of the devise, the amount so used shall be treated and considered an absolute bequest and devise to the survivor of us of the amount so used. If any legatee or devisee in the will or codicil named shall institute or prosecute any action, wherein or whereby the right of the survivor to so use the principal or any part thereof, the legacy or devise to such person or persons shall be thereby forfeited and annulled, and

the same shall revert and inure to the residue of the estate of the survivor.''

Mr. Hooler died in 1932. The will and codicil were probated in January, 1933, as the last will and testament of Mr. Hooler. Mrs. Hooler qualified as executrix. In 1936, Mrs. Hooler executed another will. Thereafter she added several codicils to it, changing several of the bequests set out in the joint will. Mrs. Hooler died in January, 1944. Her will and codicil were offered for probate by the Trust Company, acting in the capacity of executor of the last will and codicil of Mrs. Hooler, and as the nominated executor of the joint will and codicil of the Hoolers. The Trust Company instituted this action seeking advice and direction of the court and a declaratory judgment to determine whether the estate of Mrs. Hooler should be distributed in accordance with the joint will and codicil or the later will and codicil executed by Mrs. Hooler. The lower court held that an absolute fee vested in Mrs. Hooler at the death of her husband, and, therefore, she could dispose of the property as she pleased. Briefs have been filed for both sets of the legatees and the Trust Company has filed an excellent brief wherein a thorough discussion of the law of the case is presented. Naturally it has not taken a partisan side in the case.

The question before us is properly stated in the Trust Company's brief:

''Are the papers which were executed in the form of a joint will and codicil by Jacob F. Hooler and Barbara Hooler in 1932, of such controlling effect that the last will and six (6) codicils executed subsequently by Barbara Hooler, and probated upon her death in January, 1944, are ineffective in so far as the bequests and devises set out in the last will and codicils are concerned?''

At the outset we may say that, even if the chancellor arrived at the right answer, he reached it on an erroneous construction of the will, because it is quite obvious to us that the makers of the joint will had no intention of giving the survivor an absolute estate. The recent cases of Wetstein's Ex'r v. Shannon, 302 Ky. 371, 194 S. W. 2d 830; Berner v. Luckett, 299 Ky. 744, 186 S. W. 2d 905; and Bills' Adm'x v. Bills' Ex'x, 299 Ky.

749, 186 S. W. 2d 907, involved the question of whether the first taker took an absolute fee or a life estate. In each case we held that the first taker took only a life estate with power to encroach upon the corpus for maintenance. Clearly, that is what the Hoolers intended.

Reference to a well prepared article entitled "Concerted Wills—A Possible Device for Avoiding the Widow's Privilege of Renunciation," in Vol. XXXIII, Number 2, of the Kentucky Law Journal by Dean Alvin E. Evans, will show that joint or mutual wills are by no means uncommon. We agree with Dean Evans that the word "concerted" better fits a will such as the one under consideration than the word "joint." However, since most of the cases and texts refer to joint wills, we will use the term herein.

There appear to have been three cases before this Court involving joint wills: Breathitt v. Whittaker's Ex'rs, 47 Ky. 530, 8 B. Mon. 530; Hill v. Harding, 92 Ky. 76, 17 S. W. 199, 437; and Price v. Aylor, 258 Ky. 1, 79 S. W. 2d 350. The ruling in the Breathitt case was based upon the fact that the power granted the testators by their son was joint and not joint and several, and the joint will did not dispose of any separate estate of either testator. In the Hill case it was contended that a joint will was a nullity because it destroyed the power of revocation on the part of both parties, and, therefore, ran afoul of the policy of law that an instrument to be a will must be revocable. In that case there was no effort made to revoke the will. The Price case involved a joint will made by Mr. and Mrs. Price. As in the will under consideration the survivor was to take the property for life with a gift over to third parties. Mrs. Price died first and her husband had the will probated. Later he remarried and made another will. We upheld the ruling of the lower court to the effect that the joint will controlled on the theory that a contract to convey may be established in the absence of a special contract, by the joint will when such an instrument on its face discloses the contract. It was pointed out in that case that joint wills are generally upheld where it can be shown that the parties contracted to make them. See also the Annotations in 43 A. L. R. 1020; 60 A. L. R. 627; 57 A. L. R. 609; and 102 A. L. R. 491.

While the proper conclusion was reached in the Price case, it was probably based on an erroneous assumption. In 69 C. J. sec. 2719, p. 1299, it is said:

"So, no estate vests under the will of the surviving party to an agreement for mutual wills, on the ground of its irrevocability after the death of the first maker; all that vests, if anything, on the death of the first of the testators is a right of action to enforce the contract against the survivor."

It was held that Mr. Price took a life estate under the joint will. This conclusion overlooked the fact that as to his estate the joint will was ineffective in law until his death and was revoked prior thereto. It seems to us that, where a joint will is found to be based upon a contract, the estate is impressed with a trust for the use and benefit of the legatees in the joint will, and while the survivor may revoke the joint will the legatees under it may go into a court of equity and enforce the trust. Page on Wills, Vol. 1, section 108, p. 288, Vol. 4, section 1709, p. 833, section 1736, p. 896. 43 A. L. R. 1024; 102 A. L. R. 491; 69 C. J. sec, 2726, p. 1302.

Reference to some of the authorities cited above will show that there have been instances where equity would not enforce the joint will when one of the parties had a considerable estate and that of the other was small or negligible. In contending that the joint will of the Hoolers should not be upheld it is pointed out that Mr. Hooler was insolvent at the time of his death and that Mrs. Hooler owned considerable real estate. The extent of Mr. Hooler's estate at the time the will was made is not shown. However, we do not think that question is controlling here. He could have had a substantial estate at the time he made the will and lost it by the time of his death, or, on the other hand, he could have had a small estate in the first instance and acquired a substantial one before his death. We think a contract can be spelled out of certain provisions of the will itself. There was a gift over of both estates in addition to what was necessary for the maintenance of the survivor, and, furthermore, there were several bequests to individuals for faithful services rendered. Provision was also made. for perpetual care of the parties' graves and also that of Henry Hindley.

In the case of Frazier v. Patterson, 243 Ill. 80, 90 N. E. 216, 218, 27 L. R. A., N. S., 508, 17 Ann. Cas. 1003, where the joint will of the husband and wife made each the beneficiary with the provision that on the death of both the estate should go to their daughter, it was said that this of itself was evidence of a contract between the parties to dispose of their property in the manner provided. The court said:

"In the case at bar the parties had one daughter. They had a mutual interest in her. They desired that she should have the enjoyment of their real estate during her life and at her death her children should take it in fee. If evidence of a mutual compact is necessary in such case, that evidence is afforded by what the parties did. We cannot see how the situation would be any different if witnesses had testified that they heard this husband and wife discuss what disposition they would make of their respective estates, and that they agreed with each other that they would make a joint will such as they did make. The fact that they made such will is satisfactory proof to our minds that it was done in accordance with their mutual compact to dispose of their property in this manner."

Clearly in the case at bar the joint will shows a mutual interest in at least some, if not all, of the beneficiaries. It is significant also that the codicil gave the survivor additional interests in the estate. If the spouses had not thought that the will of each found in the joint will was dependent upon the will of the other, they would not have made this alteration.

An effort is made also to distinguish the Hoolers' will from that of the Prices, because of the provision in the latter to the effect that all of the property was acquired by the joint labors of both parties and "especially through the efforts of C. W. Price." We do not think the cases can be distinguished on this ground for reasons heretofore mentioned, as well as the fact the provision in the Price will itself shows that the property was acquired "especially" through Mr. Price's efforts.

It follows from what has been said that it is our view that the judgment should be and it is reversed, with directions that it be set aside and for the entry of a judgment consistent with this opinion.