George BONER'S ADMINISTRATRIX (Emma Lou Boner), et al., Appellants,

v.

John A. CHESNUT'S EXECUTOR (J. Stephen Watkins, et al.), et al., Appellees

Court of Appeals of Kentucky.

March 7, 1958.

Rehearing Denied Dec. 12, 1958.

H. E. Hay, Frankfort, for appellants.

Joe G. Davis, Walter L. Brock, Jr., Lexington, James F. Clay, Danville, for appellees.

SIMS, Judge.

This is an appeal from a judgment of the Boyle Circuit Court declaring $25,000 in property given under an antenuptial contract to be an obligation of John A. Chesnut's estate, and confirming a deed made by his executor to P. H. Best under a contract Best had made with Chesnut concerning the sale of a business building.

On December 6, 1941, John A. Chesnut and his wife Mary made reciprocal wills with the same witnesses and drawn by the same attorney. At that time they had been married 50 years but had not been blessed with issue. Each of these wills leaves the testator's estate to the spouse for life; the remainder to be paid in numerous bequests, substantially the same in both wills, with the residue to be divided equally between his heirs and her heirs. Each will recites the testators "have this day executed practically identical wills, except for a few minor bequests of our individual personalty." On July 6, 1943, Mrs. Chesnut died. Her will was not probated until February 14, 1952, after her husband's death.

On July 10, 1943, Chesnut entered into a contract with P. H. Best giving him an option to purchase for $15,000 a store building owned by Chesnut by making a demand on the latter's personal representative within a year after his death. Best paid the $15,000 to Chesnut's executor and received a deed for the property on January 8, 1952.

On June 22, 1944, Chesnut entered into an antenuptial contract with Lillie B. Harmon. This contract recites Chesnut agreed to devise $25,000 in money and property to Miss Harmon, which was all she would get out of his estate. If she predeceased him, her heirs would not get any of this gift nor would he get any of her estate. She prom

ised to leave the bulk of this devise upon her death to an Orphans Home. The parties to the contract were married July 6, 1944.

On October 11, 1950, Chesnut executed a second will, expressly revoking any will he had previously made. This will confirmed the terms of the antenuptial contract. Some of the bequests were the same as those made in the 1941 will, but this second will provided the residue was to go to Georgetown College instead of being divided between his and his first wife's heirs, as was provided in his reciprocal will. Chesnut died December 2, 1951, and his second will was probated nine days later.

This action was originally brought by the brother of Mary Boner Chesnut, the first wife, to enforce the terms of Chesnut's reciprocal will, to hold for nought his second will, the antenuptial agreement and the contract made with Best. The learned trial judge Hon. K. S. Alcorn, wrote a full and exhaustive opinion. Feeling we cannot do better, we adopt Judge Alcorn's opinion, although we do not use his exact words.

In this suit the beneficiaries of the reciprocal wills claim that same were executed pursuant to contract by the testators, and prior to the death of Mary B. Chesnut neither she nor John A. Chesnut revoked her or his reciprocal will, and the contract in question was binding upon John A. Chesnut after her death; consequently from her death his estate was impressed with a trust in favor of the beneficiaries of the reciprocal wills, and they are entitled to enforce the trust and to a prior lien on his estate superior to any claim of the widow under the antenuptial contract or under the will of October, 1950, and also contend they are entitled to have canceled the deed the executor of Chesnut's second will made to Best for the store building.

The widow and Georgetown College, the residuary beneficiary under the second will, insist there was no contract for the execution of the reciprocal wills, nor any con-

sideration for such contract. Furthermore, that real estate being involved, any contract for its disposition would be within the statute of frauds and unenforceable, because no sufficient writing evidenced it, and that John A. Chesnut never accepted any benefits under the reciprocal will of Mrs. Mary B. Chesnut after her death.

■ The rule is that a contract for reciprocal wills need not be express and it may arise by implication from the circumstances which make it clear the parties had such wills in mind; or the contract may be established by the instruments themselves when on their face such contract is disclosed. Wright v. Wright, 215 Ky. 394, 285 S.W. 188; Price v. Aylor, 258 Ky. 1, 79 S.W.2d 350; Watkins v. Covington Trust & Banking Co., 303 Ky. 644, 198 S.W.2d 964; Annotations 169 A.L.R. 73; 57 Am. Jur. "Wills" § 694, p. 468. In the instant case each will recited the spouses had "this day executed practically identical wills except for a few minor bequests." Without going into details, the terms of the wills force us to the conclusion that these two wills were executed as a result of a plan carefully determined by the testators. Clearly, this established the contract to make reciprocal wills under the above authorities.

The fact that the reciprocal wills themselves evidenced the contract disposes of the contention as to the bar of the statute of frauds, KRS 371.010. 49 Am.Jur. "Wills" §§ 330-1, pp. 642-3; Annotations 169 A.L.R. 41.

It was said in the Watkins case, 303 Ky. 644, 198 S.W.2d 964, that where reciprocal wills are based upon a contract, the estate is impressed with a trust for the benefit of the legatees who may invoke the aid of equity to enforce the trust should the survivor revoke his will. Georgetown College argues that the inequality between the estate of the wife and that of her husband is so great as to preclude third party beneficiaries from being granted specific performance, citing the Watkins opinion.

True, Chesnut's estate was much greater than that of Mrs. Chesnut at the time the wills were made; but had she been the survivor, her estate would have in round numbers amounted to $40,000 and his to $60,000. This would not have been such a disparity as to prevent specific performance.

■ It is argued that Chesnut did not probate his wife's will and accepted no benefits from it, therefore he may revoke his contract after her death. Adequate notice is basic to the right to revoke while the other is living, and it logically follows that if one, who having fully complied with the contract dies, then it is too late for the other to rescind. 57 Am.Jur. "Wills" § 714, p. 483; Annotation 169 A.L.R. 50. As the contract to make reciprocal wills was valid, it was not necessary that Mr. Chesnut probate his wife's will or that he accept the benefits thereunder in order that he be bound by the contract. Furthermore, his failure to probate his wife's will does not imply he declined to accept its benefits. In all probability he declined to probate it in order not to make public the contents of his own will, since her will recited her husband had made an identical will.

■ The argument that Chesnut's first will was revoked by KRS 394.090 upon his subsequent marriage overlooks the fact it is the contract, and not the will, which could not be revoked. See 42 Ky. Law Review, p. 573 for a discussion of the question.

■ We now come to the rights of the widow under the antenuptial contract. Although she had notice of the reciprocal contract her husband had made with his first wife, the second wife entered into this marriage in good faith and not for mercenary purposes or to defeat Mr. Chesnut's first will. Except for the antenuptial contract giving her $25,000 of her husband's estate upon his death, she would have received perhaps twice that sum as dower. A valid contract to devise does not deprive the parties thereto of complete control of

their respective properties, or limit them in the disposition thereof made in good faith during their lifetime, unless a plain intention to this effect is set out in the will, or in the contract pursuant to which it was executed. 57 Am.Jur. "Wills" § 710, p. 479; Annotations 108 A.L.R. 868. It was the duty of Chesnut to support his second wife during his life and after his death the law gives her dower in his estate.

In Wides v. Wides' Ex'r, 299 Ky. 103, 184 S.W.2d 579, the husband, prior to his second marriage, had made a contract with his first wife in reaching a property settlement in a divorce action wherein he agreed to devise his estate to her and their children. The second wife had no notice of that agreement when she married Wides. We there held the widow was entitled to her distributable part of his estate but left open the question of what the decision would be in a case where the widow had notice of the contract.

Even though Mrs. Chesnut, the widow in the instant case, had notice of Chesnut's reciprocal will, the equities are much stronger in her favor than they were for Mrs. Wides. Mrs. Chesnut married in good faith, made a dutiful wife and the beneficiaries under these reciprocal wills were all people who had no moral or legal claim upon the testators. It would be most unjust and inequitable to say that collateral beneficiaries should take the entire estate of Mr. Chesnut and leave his widow with nothing; or that if a man with a reciprocal will remarried, his widow could receive nothing from his estate.

■ Appellants asked that the contract between Chesnut and Best be canceled under which Chesnut's personal representative was to, and did, convey a business house to Best for $15,000. Admittedly, the building went cheap, but Chesnut got exactly what he paid for it when he retired from business. The option contract covering this building was made in good faith. Under authorities previously cited, one who obligates himself to make a reciprocal will is not precluded from buying and selling property in good faith.

We conclude the trial judge was correct in holding that the estate of Chesnut was impressed with a trust in favor of the beneficiaries named in his reciprocal will, with the exception that his widow's rights under the antenuptial contract are superior to the rights of such beneficiaries.

The judgment is affirmed.