RENDERED:  JUNE 21, 2024; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2023-CA-0996-MR


SHARON Q. ELZY, INDIVIDUALLY
AND SHARON Q. ELZY, AS
EXECUTRIX OF THE ESTATE OF
ARTHUR ELZY, SR.                                                APPELLANTS


|  | APPEAL FROM JEFFERSON CIRCUIT COURT |
| --- | --- |
| v. | HONORABLE PATRICIA MORRIS, JUDGE |
|  | ACTION NO. 20-CI-004661 |


ARTHUR C. ELZY, JR.; LAUREN
ERNST WILLIAMS; PHILLIP ERNST;
AND THERESA MILES                                                APPELLEES


OPINION
REVERSING AND REMANDING

** ** ** ** **

BEFORE:  CETRULO, GOODWINE, AND A. JONES, JUDGES.

GOODWINE, JUDGE:  Sharon Q. Elzy, Individually and Sharon Q. Elzy, as

Executrix of the Estate of Arthur Elzy, Sr. ("Sharon") appeal from an order of the

Jefferson Circuit Court granting summary judgment in favor of Arthur C.

"Charlie" Elzy, Jr. and Theresa Miles (Arthur's adult children from a prior marriage). The circuit court determined Arthur's new will was invalid and void. After careful review, finding error, we reverse and remand.

According to the circuit court's opinion and order granting summary judgment:

> Arthur met Sharon in 1999 and married in 2002. They each had two children from previous marriages; Plaintiffs [Charlie and Theresa] are Art's children.[1] In 2007, Art contacted attorney Kenneth Matheis and asked him to draft a Post Marital Agreement & Disclosure Statement (hereinafter "Agreement") and Wills, which Art and Sharon signed on or about May 10, 2007. No signed copies of the Agreement are available; Sharon destroyed hers in 2017 or thereafter and Arthur may have destroyed his, as detailed below, but Mr[.] Matheis retained an electronic copy that he testified is [] consistent with the signed originals.

Record (R.) at 219

> The post marital agreement states that it is:

> "a contract to make a Will and not to revoke or renounce the Wills marked as Annex A and Annex B. . . . " The purpose of the Agreement was to list the signatories' respective property and their joint property and "fully and finally settle all property rights as they now or shall hereafter exist. . . ." Among other things, the Agreement establishes how Arthur's property and the joint property would be treated should he predecease Sharon. In short, she would receive a life estate in several parcels of real

---

[1] Sharon's children, Lauren Ernst Williams and Phillip Ernst Williams, were named as defendants below and are named as Appellees on appeal, but they did not participate below or on appeal.

property and fifty percent of the proceeds should she sell any of them during her lifetime. Their respective children would get various benefits depending on who predeceases the other. Arthur's 2007 Will included provisions consistent with the Agreement.

R. at 219-20. The agreement set forth provisions for changes or amendments but did not address the procedure for revocation while the parties were both living.

On the same day, the parties executed wills consistent with their agreement. Arthur's will states it was made under the agreement, and that it was intended to be a contract to make a will under KRS[2] 394.540.

Nearly ten years later, in 2017, Arthur informed Mr. Matheis that he wanted to revoke the agreement, and he and Sharon wanted to execute new wills. In the complaint, Charlie and Theresa allege Arthur was suffering from Alzheimer's Disease when he executed the 2017 will, and he lacked testamentary capacity, but that issue is not before this Court. Mr. Matheis confirmed a mutual agreement to revoke the agreement in his deposition. On August 3, 2017, Arthur and Sharon met with Mr. Matheis to revoke the agreement and execute new wills, which contained language to that effect. Arthur's will states:

> I, ARTHUR C ELZY, SR , a resident of Louisville, Jefferson County, Kentucky, being of sound mind and disposing memory, do hereby make, publish and declare this to be my Last Will and Testament, revoking all Wills and Codicils by me at any time heretofore made. **My spouse and I have revoked and hold for naught that**

---

[2] Kentucky Revised Statute.

**certain POST MARITAL AGREEMENT &**
**DISCLOSURE dated May 10, 2007**.

R. at 221. Arthur's 2017 will bequeathed his entire estate to Sharon if she survived him, but if Sharon predeceased Arthur, then his estate would have been equally divided between Arthur and Sharon's children.

Mr. Matheis testified that he destroyed his copies of the agreement and previous will and instructed Arthur and Sharon to do the same. Sharon testified in her deposition that she destroyed her copies in 2017, and she believed Arthur destroyed his as well. Thus, no signed copies of the agreement exist.

Arthur died on January 27, 2020, and his 2017 will was accepted for probate by the Jefferson District Court. Sharon was appointed executrix.

On August 11, 2020, Charlie and Theresa filed an action in the Jefferson Circuit Court contesting the will. Charlie and Theresa asserted the following claims: breach of fiduciary duty of Sharon in her roles as the power of attorney and executrix; lack of testamentary capacity, fraud, and undue influence; and lack of capacity and lack of consideration for revocation of postnuptial agreement. After conducting discovery, Charlie and Theresa moved for summary judgment, arguing the agreement was not validly revoked because the terms of the agreement made it irrevocable. If it was validly revoked, there is insufficient proof of revocation. Their summary judgment motion did not address the remaining causes of action in the complaint.

On August 7, 2023, the circuit court entered an opinion and order granting judgment in favor of Charlie and Theresa. The circuit court found that despite the steps Arthur and Sharon took to revoke the agreement, the agreement's express terms made it amendable but not revocable or renounceable, that the agreement by its plain terms could not be revoked at any time by the parties' consent. Parol evidence cannot aid in establishing revocation. Thus, the circuit court ruled that Arthur's 2017 will was invalid and void. This appeal followed.

On appeal, Sharon argues the circuit court erred in its application of the law to the facts by finding the agreement irrevocable. Sharon agrees with the circuit court's findings of fact and the application of contract law. Specifically, she agrees the signed copies of the agreement do not exist, but the copy from Mr. Matheis' computer probably represents the terms in the destroyed agreement. She also agrees that the executed agreement would have qualified as a contract to make a will under KRS 394.540. Sharon agrees with the contract case law the circuit court applied to the facts. However, Sharon disagrees with the circuit court's application of the law to the facts as to the revocation of the agreement. We agree with Sharon that the circuit court erred in granting summary judgment in favor of Charlie and Theresa.

We apply the following standard in reviewing the circuit court's grant of summary judgment:

The proper standard of review on appeal when a trial judge has granted a motion for summary judgment is whether the record, when examined in its entirety, shows there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. The trial judge must view the evidence in a light most favorable to the nonmoving party, resolving all doubts in its favor. Because summary judgment does not require findings of fact but only an examination of the record to determine whether material issues of fact exist, we generally review the grant of summary judgment without deference to either the trial court's assessment of the record or its legal conclusions.

*Bruner v. Cooper*, 677 S.W.3d 252, 269 (Ky. 2023) (quoting *Hammons v. Hammons*, 327 S.W.3d 444, 448 (Ky. 2010)).

First, we address the issue of whether a will contract is revocable while both parties to the contract are living. In *Duncan v. Wold*, 846 S.W.2d 720 (Ky. App. 1992), this Court explained the history of joint wills in Kentucky, the enactment of KRS 394.540, which created will contracts, and the statutory requirements for a will contract:

Prior to June of 1972, the Kentucky Courts had uniformly held that a joint will could not be revoked or altered by a decedent's spouse to deprive a beneficiary of property or wealth. *Hatfield v. Janell*, Ky., 433 S.W.2d 346 (1968). The line of reasoning held that once a surviving spouse accepted the benefits of a joint will from the decedent, that act in and of itself constituted the fruition of the contract. 57 Am.Jur., Wills, Section 712 and 713. The death of a complying party to the contract prevented the surviving spouse from ever tampering with the joint will. [*Boner's*] *Administratrix v.* [*Chesnut's*] *Executor*, Ky., 317 S.W.2d 867 (1958).

-6-

But with the passage of KRS 394.540 the legislature clearly rejected the viewpoint of the permanency of joint wills. KRS 394.540(2) states emphatically that the execution of a joint and mutual will does not create a presumption that it is an irrevocable contract, and it "is not susceptible of any other interpretation." *Martin v. Cassady*, Ky.App., 628 S.W.2d 888 (1982). If plaintiff cannot furnish any evidence to meet the three prongs of KRS 394.[540], his argument fails. In this case, plaintiff has not furnished sufficient evidence to meet this test.

*Id.* at 722.

KRS 394.540 provides:

(1) A contract to make a will or devise, or not to revoke a will or devise or to die intestate, if executed after June 16, 1972, can be established only by:

    (a) Provisions of a will stating material provisions of the contract;

    (b) An express reference in a will to a contract and extrinsic evidence proving the terms of the contract; or

    (c) A writing signed by the decedent evidencing the contract.

(2) The execution of a joint will or mutual wills gives rise to no presumption of a contract not to revoke the will or wills.

Sharon does not dispute that the agreement is a will contract, but she argues it was revocable. Though KRS 394.540 governs whether such a contract is valid and enforceable, it does not render will contracts irrevocable while both

-7-

parties to the contract are living. Instead, will contracts become irrevocable upon the death of one spouse to prevent the surviving spouse from depriving "a beneficiary thereunder of property devised to him by the will." *Martin v. Cassady*, 628 S.W.2d 888, 890 (Ky. App. 1982); *see also Duncan v. Wold*, 846 S.W.2d 720 (Ky. App. 1992). This is consistent with the general contract principle that: "Where a contract has been fully performed by one party it cannot be terminated by the other." *Business Men's Assur. Co. of America v. Eades*, 161 S.W.2d 920, 922 (Ky. 1942).

Sharon further argues the circuit court erred in finding that the agreement was "amendable, but not revocable or renounceable." R. at 223. Kentucky's highest court has long held: "[t]he power to modify or rescind a preexisting agreement is coextensive with the power to initiate it; either is an incident of contractual capacity. This rule prevails, though the contract recites that no modification shall be made except in writing." *Energy Home, Div. of Southern Energy Homes, Inc. v. Peay*, 406 S.W.3d 828, 834 (Ky. 2013) (quoting *Vinaird v. Bodkin's Adm'x*, 72 S.W.2d 707, 711 (1934)). As such, will contracts are revocable while both spouses are living, and Arthur and Sharon's will contract was revocable despite language in the agreement.

Because the circuit court found the agreement was irrevocable, it did not address the issue of whether Arthur's 2017 will revoked his 2007 will.

However, based on our *de novo* review of the record, there is no genuine issue of material fact regarding revocation of the agreement. "There is no rule of law which prevents the mutual annulment of a written contract, . . . even by parol." *Johnson v. Stumbo*, 126 S.W.2d 165, 170 (Ky. 1938). Here, the circuit court found: "No signed copies of the Agreement are available; Sharon destroyed hers in 2017 or thereafter and Arthur may have destroyed his, as detailed below, but Mr[.] Matheis retained an electronic copy that he testified is [] consistent with the signed originals." R. at 219. Additionally, Arthur's 2017 will states in bold and capitalized letters: "**My spouse and I have revoked and hold for naught that certain POST MARITALAGREEMENT & DISCLOSURE dated May 10, 2007**." R. at 221. Charlie and Theresa presented no contrary evidence to create a material issue of fact precluding summary judgment on this issue.

Additionally, even if the only evidence of revocation was Arthur's 2017 will, he could unilaterally terminate the contract. "[A]s a general rule, one party's total failure to perform his obligations under a contract justifies the non-breaching party in treating the contract as abandoned and suspending his own performance." *Pace v. Burke*, 150 S.W.3d 62, 66 (Ky. App. 2004). Though this would technically constitute a breach of contract, Sharon would have no damages because she inherited more from Arthur under his 2017 will than his 2007 will. Thus, we conclude Arthur's 2017 will validly revokes the agreement and his 2007

will.  Though the method of revocation is legally valid, nothing in this opinion impacts findings regarding testamentary capacity on remand.

For the foregoing reasons, we reverse the judgment of the Jefferson Circuit Court and remand for (1) entry of an order denying summary judgment finding the agreement was revocable and was validly revoked and (2) further proceedings on the remaining causes of action.

ALL CONCUR.


BRIEF FOR APPELLANTS:

P. Kevin Ford
T. Colin Ford
Louisville, Kentucky

BRIEF FOR APPELLEES:

Kirk Hoskins
Louisville, Kentucky